THE P. DOUGHERTY COMPANY, PETITIONER, *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT.

Docket No. 5080.   Promulgated September 24, 1945.

*Theodore B. Benson, Esq.*, for the petitioner.
*Philip A. Bayer, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: *Issue 1.*—Petitioner contends that in computing depreciation on its tugs and barges it is entitled to include in the cost basis thereof the so-called "excessive depreciation" which it charged cff in its books and its income tax returns in prior years.

Some of the tugs and barges on which depreciation for prior years was computed lay idle for varying periods during the years 1922 to 1942, inclusive, and petitioner contends that for such periods they were not subject to depreciation because not used in trade or business, within the meaning of section 23 (1) (1) of the Internal Revenue Code. Petitioner restored to capital the depreciation charged off its books and in its returns for those periods, and it now claims that its basis for depreciation, that is, the adjusted cost basis under section 113 (b), should include such restored capital.

The statutory term "used in the trade or business" has been construed to mean "devoted to the trade or business" and to include all such property, whether actually in use during the taxable year or not. See *Kittredge* v. *Commissioner* (C. C. A., 2d Cir.), 88 Fed. (2d) 632 (1937). The court held in that case, affirming a decision based on a memorandum opinion of this Court, that the cost basis for determining the gain or loss on the sale of a winery in 1931 should be diminished by the depreciation allowable on the property for the years 1922 to 1931, while it was lying idle. That case was followed in *Yellow Cab Co. of Pittsburgh* v. *Driscoll*, 24 Fed. Supp. 993, where the court said:

Plaintiff bases its right to recover in this case on the contention that "For income tax purposes, in computing taxable net income, the language of Section (23) (1) of the Revenue Act of 1934 limits and restricts the allowance for depreciation to property actually used in the trade or business of the taxpayer." and that the taxicabs were not so actually used. [The taxicabs in question lay idle in storage from 1931 to 1935.] This contention is not sustained. The taxicabs involved were not abandoned prior to November 30, 1935. They were held by plaintiff for actual use and would have been used if business conditions would have justified the use thereof. This constitutes "property used" within the meaning of the statute. *Kittredge* v. *Commissioner of Internal Revenue.* 2 Cir., 88 F. 2d 632; *Independent Brick Co.* v. *Commissioner,* 11 B. T. A. 862; *United States* v. *Ludey,* 274 U. S. 295. * * *

We think that the respondent was correct in computing depreciation deductions on the tugs and barges for the time when they were not in actual use.

The broad question as to whether petitioner is entitled to take depreciation deductions on the tugs and barges that had been fully depreciated through deductions taken in prior years is controlled by the decision of the Supreme Court in *Virginian Hotel Corporation of Lynchburg* v. *Helvering*, 319 U. S. 523. In that case it was held that the basis for computing depreciation under section 23 (a) (1) of the code may not be increased by the amount of excessive depreciation charged off and allowed in prior years, regardless of whether all of the prior deductions were actually applied against income, resulting in a tax advantage.

Under the Supreme Court's ruling in that case it is immaterial that for many early years petitioner reported net losses in excess of the depreciation deductions which it claimed in its returns.

On authority of the cases cited we sustain the respondent on this issue.

*Issue 2.*—Petitioner alleges in its return that it sustained a loss in 1943 of $141,000 on the "involuntary conversion" in that year of three barges, the *Allegany*, the *Caroline*, and the *Montgomery*. The cost of those barges had been fully charged off through depreciation taken in prior years.

Under the statute the basis for computing gain or loss on a sale or exchange, under section 111 of the code, or for computing losses, under section 23 (i) or section 113 (b), is the same as that for computing depreciation; that is, the adjusted cost. See section 113 (a) and (b). The evidence before us is not clear as to the value or the remaining useful life, if any, of the barges in question when they were sold for scrap. In any event, however, since they had no basis in petitioner's hands at the time of their sale, or at the time of their "involuntary conversion" to scrap, petitioner sustained no deductible loss in disposing of them.

*Issue 3.*—Petitioner claims that the respondent has understated its net operating losses for 1942 (to be carried forward to 1943) by disallowing any depreciation on its fully depreciated tugs and barges and by disallowing the entire amount of the cost of reconditioning the barge *Maryland* as an expense of that year.

The depreciation question has already been disposed of under issue 1 above and requires no further discussion here.

During the taxable year the petitioner owned the barge *Maryland*, which had been acquired by it in 1917. The cost of this barge had been recovered through depreciation deductions prior to the taxable year. During the taxable year the petitioner spent $15,523.30 in enlarging the hatches and in making other improvements. The parties

have stipulated that the cost of these improvements was a capital outlay, to be recovered through deductions for depreciation during the estimated useful life of the barge. During the taxable year the petitioner also spent $17,593.32 in rebuilding the stern of the barge. It was discovered that the woodwork of the stern had rotted away. These rotted timbers and planks had to be torn out and replaced. Although the amount spent is claimed as a cost of repairs, the petitioner's president testified that they amounted to a "replacement" of the stern. Section 24 of the Internal Revenue Code provides in part as follows:

SEC 24. ITEMS NOT DEDUCTIBLE.

(a) GENERAL RULE.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \* \*

(2) Any amount paid out for new buildings or for permanent improvements or betterments made to increase the value of any property or estate;

(3) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.

The petitioner contends that this expenditure of $17,593.32 falls in a different category from the expenditure made for enlarging the hatches. We are of the opinion that it does not. The work done was more in the nature of a permanent betterment or restoration than a recurrent repair or upkeep. The benefits to petitioner were to last over a period of several years, perhaps for the remaining life of the barge. It was more like putting on a new roof, *Georgia Car & Locomotive Co.*, 2 B. T. A. 986, or restoring a building, *Joseph E. Hubinger*, 13 B. T. A. 960; affd., 36 Fed. (2d) 724.

We sustain the respondent's determination in treating the expenditure of $17,593.32 the same as he treated the expenditure of $15,523.30, i. e., as a capital expenditure.

*Issue 4.*—Petitioner contends that its equity invested capital computed under section 718 of the code should be increased by including, under section 718 (a) (2), additional paid-in capital of $220,000 representing the excess of the value of the tugs and barges and other assets paid in for stock at the time of petitioner's organization. Section 718 provides in part as follows:

SEC. 718. EQUITY INVESTED CAPITAL.

(a) DEFINITION.—The equity invested capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following amounts, reduced as provided in subsection (b)—

(1) MONEY PAID IN.—Money previously paid in for stock, or as paid-in surplus, or as a contribution to capital;

(2) PROPERTY PAID IN.—Property (other than money) previously paid in (regardless of the time paid in) for stock, or as paid-in surplus, or as a contribution to capital. Such property shall be included in an amount equal to its basis (unadjusted) for determining loss upon sale or exchange. If the property

was disposed of before such taxable year, such basis shall be determined under the law applicable to the year of disposition, but without regard to the value of the property as of March 1, 1913. If the property was disposed of before March 1, 1913, its basis shall be considered to be its fair market value at the time paid in. * * *

Since all of the tugs and barges which petitioner acquired at the time of its organization were disposed of prior to 1913, their fair market value at the time acquired should be included in petitioner's invested capital under section 718 (a) (2) above.

In petitioner's opening books $30,000 was set up representing the capital stock, that being the fair market value of the 300 shares issued, and $220,000 was set up as surplus. The respondent has allowed invested capital in respect of such assets of only $30,000.

The evidence is that there were paid in to petitioner at the time of its organization 7 tugs and 12 barges, together with other assets, which were entered in the books at an aggregate value of $250,000. We do not know what portion of the claimed value of $250,000 represented the "cash and other assets" and what portion the value of the tugs and barges. All of petitioner's books and records were destroyed by fire in 1904. The evidence before us consists principally of the testimony of petitioner's office manager, who has been with the company since its incorporation. He began his services with petitioner as bookkeeper when he was about 19 years of age and made the opening entries in petitioner's books. He testified that the $220,000 which was entered in the surplus account represented the excess of the value of the assets paid in over the par value of the capital stock, as determined at that time. Since petitioner was a close family corporation, the amount of the capital stock was not considered important.

The witness testified that 3 of the 7 tugs were "bay tugs" and that the others were "harbor tugs"; that one was almost new and the others not more than 5 or 6 years old; that there were 6 "Jackson barges" capable of carrying about 350 tons of coal and 6 which carried about 700 tons; that the Jackson barges were all sold in 1898; and that the other 6 barges and the 7 tugs were sold prior to 1904. The witness did not remember the price of any of them. He was not permitted to express an opinion as to the fair market value of the tugs and barges because, on his own admission, he could not qualify as an expert on valuing tugs and barges.

It is quite evident, however, that the 7 tugs and 12 barges had a value many times the par value of the $30,000 of capital stock. That amount was little, if any, more than the value of one of the tugs or barges. Although the evidence of actual value is meager, and necessarily so because of the remoteness of the valuation date, we feel justified in concluding that altogether the 7 tugs, 12 barges, and other assets paid in for capital stock had a fair market value of at least

$250,000. The additional amount of $220,000 should therefore be included in petitioner's equity invested capital as paid-in surplus under section 718 (a) (2) above.

Petitioner further contends that there should be added to its equity invested capital, under section 718 (a) (3), the amount of the stock dividend issued in 1922, namely, $990,000, less the amount of the stock surrendered in 1926, namely, $510,000, making a net increase of $480,000.

Section 718 (a) (3) provides for including in equity invested capital distributions in stock "to the extent to which they are considered distributions of earnings and profits." Section 115 (h) provides that a stock dividend shall not be considered a distribution of earnings or profits (1) if no gain to the distributee from the receipt of such stock was recognized by law, or (2) if the distribution was not subject to tax in the hands of the distributee because it did not constitute incom^ to him within the meaning of the Sixteenth Amendment to the Con- stitution, or because exempt to him under section 115 (f) of the Reve- nue Act of 1934, or a corresponding provision of a prior revenue ac^

Section 35.718-3 of Regulations 112 provides that:

SEC. 35.718-3 DETERMINATION OF DAILY EQUITY INVESTED CAPITAL—DISTRIBU- TIONS IN STOCK.—A distribution made prior to the taxable year by a corporation in its stock, or in rights to acquire its stock, to the extent to which it constitutes a distribution of earnings and profits of the corporation, constitutes an item of invested capital. * * * If a stock dividend is paid out of capital and not out of earnings and profits, or is of such a character as not to be subject to tax in the hands of a distributee because exempt as a stock dividend either by statute or otherwise, it is not deemed to constitute a distribution and does not reduce the earnings and profits account. * * *

We can not determine on the evidence before us that the stock divi- dend in 1922 was to any extent a distribution of earnings and profits. It was not taxable to the distributees, because under the provisions of section 201 (d), Revenue Act of 1921, the law in effect when the dis- tribution was made, a stock dividend was not taxable. We conclude that petitioner is not entitled to any addition to its invested capital because of the 1922 stock dividend. See *Prosper Shevenell & Son, Inc.*, 5 T. C. 88.

Petitioner further contends that in the computation of invested capital the alleged excessive depreciation taken in prior years should be restored to capital and the accumulated earnings and profits at the beginning of the taxable year, includible in equity invested capital under section 718 (a) (4), correspondingly increased. The deprecia- tion question has been disposed of adversely to petitioner's contentions in issue 1 above. For the reasons therein explained petitioner is not entitled to any additional equity invested capital by such adjustment.

*Issue 5.*—Petitioner alleges in its petition that it is entitled to have its invested capital computed under section 723. It does not press

the issue in its brief. That section, by its expressed terms, can not be invoked except:

(a) Where the Commissioner determines that the equity invested capital as of the beginning of the taxpayer's first taxable year under this subchapter cannot be determined in accordance with section 718, * * *

The respondent has made no such determination here, but on the other hand he has determined petitioner's equity invested capital in accordance with section 718. Such equity invested capital will be recomputed under the provisions of section 718, in accordance with this opinion.

*Issue 6.*—The remaining question involves the imposition of the 25 percent penalty for failure to file an excess profits tax return for the taxable year. Petitioner filed its income and declared value excess profits tax return, Form 1120, but failed to file the excess profits tax return, Form 1121.

The delinquency penalty is imposed by section 291 of the code "In case of any failure to make and file return required by this chapter, within the time prescribed by law or prescribed by the Commissioner in pursuance of law, unless it is shown that such failure is due to reasonable cause and not due to willful neglect, * * * "

Petitioner did not file an excess profits tax return, for it did not believe that it had any excess profits net income for that year. The return which it filed, Form 1120, showed a net loss of over $95,000. Some of the adjustments made by the Commissioner were proper. It is yet to be determined under Rule 50 computation, in accordance with our opinion herein, whether there will be any excess profits tax due for the taxable year.

Section 729 of the code, as amended, provides in part as follows:

(b) RETURNS.—Notwithstanding subsection (a), no return under section 52 (a) shall be required to be filed by any taxpayer under this subchapter for any taxable year for which its excess profits net income, computed with the adjustments provided in section 711 (a) (2) and placed on an annual basis as provided in section 711 (a) (3), is not greater than $5,000 * * *

The respondent does not contend, nor does the evidence suggest, that petitioner was willfully negligent in failing to file its excess profits tax return. Was its failure to do so due to a reasonable cause within the meaning of the act? It has been held in a number of cases that a taxpayer's mistaken belief that no return is required under the law does not constitute a reasonable cause for failure to file a return, so as to relieve the taxpayer of the penalty. See *West Side Tennis Club*, 39 B. T. A. 149; affd., 111 Fed. (2d) 6; certiorari denied, 311 U. S. 674; *Burford Oil Co.*, 4 T. C. 613; *Southeastern Finance Co.*, 4 T. C. 1069; *Fides* v. *Commissioner*, 137 Fed. (2d) 731; *Harry D. Kremer*, 31 B. T. A. 566. Petitioner relies upon *C. R. Lindback Foundation*, 4

T. C. 652, which in turn largely depends, so far as the present point is concerned, upon a citation of *Dayton Bronze Bearing Co.* v. *Gilligan*, 281 Fed. 709. The latter, however, specifically states that the corporation in question believed "in good faith, on reasonable grounds and after taking advice of reputable counsel, that it was not liable for munitions tax * * *." In the *Lindback Foundation* case we specifically found as a fact that the petitioner believed in good faith that it was exempt from taxation, and that its failure to file the returns on time was due to a reasonable cause and not to willful neglect. Therein, advice of counsel had been sought and followed. In the instant case there is no proof whatever that the good faith of the petitioner or its belief that it had no excess profits tax net income was based upon reasonable grounds. The *Lindback Foundation* and the *Dayton Bronze Bearing* cases, therefore, have no application. In *Fides* v. *Commissioner*, *supra*, the court said:

* * * If the putative taxpayer, in any case of doubt, should be permitted to fail to file a tax return, hoping this failure would never be detected, and then if detection should follow, to escape the prescribed penalty by a mere statement that taxpayer's counsel entertained a subjective belief, whether well-founded or not, that taxpayer was not subject to the tax statute in question, then any statutory penalty provision would become less than a brutum fulmen. * * *

See also *Economy Savings & Loan Co.*, 5 T. C. 543.

We hold that the penalty was properly added by the Commissioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

SMITH, *J.*, dissenting: Petitioner's income tax return for its fiscal year ended February 28, 1943, shows a net loss of $95,404.88. The return was filed in good faith. It filed no excess profits tax return on Form 1121, since the law did not require the filing of such return where its excess profits net income for the year was not greater than $5,000. The instructions contained on Forms 1120 and 1121 are to that effect.

The preparation of an excess profits tax return is a complicated and difficult task, and especially difficult in the case of this petitioner. The work is usually performed by a skilled accountant, employed for such purpose. The law does not require a corporation which operates at a net loss for a given taxable year to incur such an expense. Where no excess profits tax is due, the returns needlessly encumber the Commissioner's files.

The filing of an excess profits tax return in the circumstances of this petitioner is not mandatory. In fact, the law specifically provides that where the excess profits net income is not greater than $5,000 no such return is required.

The question presented here is whether the failure to file a return on Form 1121 was due to a reasonable cause. I think it was. The case would, of course, be different if the petitioner had acted in bad faith.

In *Spies* v. *United States*, 317 U. S. 492, the taxpayer had not filed a required tax return. He had been convicted of attempting to defeat and evade income tax in violation of section 145 (b) of the Revenue Act of 1936. Passing upon the question as to whether he was correctly convicted, the Supreme Court covered the whole field of penalties imposed by the revenue acts, including the delinquency penalty. The Court stated:

Sanctions to insure payment of the tax are even more varied to meet the variety of causes of default. It is the right as well as the interest of the tax-payer to limit his admission of liability to the amount he actually owes. But the law is complicated, accounting treatment of various items raises problems of great complexity, and innocent errors are numerous, as appear from the number who make overpayments. *It is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care. Such errors are corrected by the assessment of the deficiency of tax and its collection with interest for the delay.* * * * [Emphasis supplied.]

Just what constitutes a reasonable cause for failure to file a required return in the absence of willful neglect, where there is no suggestion made that the petitioner willfully neglected to file an excess profits tax return, is such a cause as appeals to a man of judgment. In exercising such judgment a person must be guided by the facts in a particular case.

It has been adverted to above that the petitioner's income tax return for the taxable year, filed in good faith, shows a net loss of $95,404.88 and no excess profits net income. Surely if such a return were correct in all particulars no excess profits tax return was required to be filed. Errors made in the filing of the income tax return were innocently made. Does the law mean that, where a corporation makes an innocent error in computing its net income and if no such error had been made the excess profits net income would be shown to be more than $5,000, the 25 percent penalty is incurred for failure to file an excess profits tax return? I do not think so. The petitioner's contention that it had no excess profits tax net income for the taxable year should save it from a penalty for failing to file such a return where, as here, the income tax return was made in good faith and the error was an innocent error.

I can not doubt but that the petitioner had a reasonable cause for failing to file an excess profits tax return for the taxable year. In my judgment the imposition of the delinquency penalty in this case is not justified.

ARUNDELL, MURDOCK, MELLOTT, and ARNOLD, *JJ.*, agree with this dissent.