Wass and Stinson Canning Company v. Commissioner. Addison Packing Company v. Commissioner.
Wass & Stinson Canning Co. v. Commissioner
Docket Nos. 1138, 1139.
United States Tax Court
1945 Tax Ct. Memo LEXIS 25; 4 T.C.M. (CCH) 1042; T.C.M. (RIA) 45350; November 30, 1945
Lawrence A. Baker, Esq., and Henry F. Butler, Esq., for the petitioners. Carl A. Stutsman, Esq., for the respondent. ARNOLD Memorandum Findings of Fact and Opinion ARNOLD, Judge: These consolidated cases involve income and declared value excess profits tax deficiencies and penalties for the calendar year 1939, as follows: Docket
No.
Deficiency
Penalty
1138
Income tax
$7,405.55
$1,851.39
1138
Declared Value Excess
Profits tax
5,314.99
1,328.75
1139
Income tax
2,396.49
599.12
1139
Declared Value Excess
Profits tax
2,407.29
601.82
Petitioners challenge respondent's determination *26 that they are taxable as corporations and contend that their income was properly reported as the income of a partnership. If the first issue is decided adversely to them petitioners raise as an alternative issue the amounts, if any, that are deductible as salaries or other compensation for personal services actually rendered to the petitioners by John W. Stinson and Calvin L. Stinson. Findings of Fact The petitioners are corporations organized under the laws of the State of Maine. Wass and Stinson Canning Company was organized in 1927, and Addison Packing Company in 1909. John W. Stinson and Calvin L. Stinson, father and son, formed a partnership in 1902, known as J. W. Stinson & Son, which engaged in the lobster and fresh fish business until 1927. The stock of Wass and Stinson Canning Company was issued originally 51% to Jones E. Wass and his two sons, and 49% to Calvin L. Stinson as nominee for the partnership of J. W. Stinson & Son, in which John W. and Calvin L. Stinson were equal partners. During 1927 and 1928 the stock owned by the Wass family was acquired by the partnership, J. W. Stinson & Son. During 1930 J. W. Stinson & Son acquired all the capital stock of the Addison *27 Packing Company. At the beginning of 1935 the two Stinsons discussed with each other and with their attorney the advisability of forming a partnership to take over the business conducted by the petitioner-corporations. It was decided that operation of the corporate businesses by a partnership would save money by eliminating corporation taxes. Upon the advice of counsel the father and son attempted to create a partnership by having Calvin L. Stinson, as treasurer of the corporations, file with the Attorney-General of Maine a statement for each corporation certifying that "said corporation has ceased to transact business, and hereby make application to be excused from further filing its annual returns with the Secretary of State, so long as its franchises remain unused, in accordance with Sec. 42 of Chap. 56 of the Revised Statutes of Maine." On June 12, 1935 and July 22, 1935, the Deputy Attorney-General of Maine certified to the Secretary of State of Maine that Addison Packing Company and Wass and Stinson Canning Company, respectively, had each furnished satisfactory proof that it has "ceased to transact business, and is therefore, under Chap. 56, Sec. 42, R.S. of Maine, excused *28 from filing annual returns with Secretary of State, as now required by law, so long as its franchises remain unused." Thereafter the corporations filed no annual returns with the Secretary of State of Maine. The business operations of Wass and Stinson Canning Company and Addison Packing Company were carried on after July 22, 1935 in the name of Wass and Stinson Canning Company in the same plants and in the same manner as prior thereto. No new books of accounts or records were opened. No changes were made in the books and records used by the corporations or in the manner in which such books and records were kept. Stationery of the corporations continued to be used. None of the corporate assets were transferred to any partnership. The capital stock of each corporation remained outstanding. Neither corporation was ever dissolved and no liquidating dividend was ever paid by either. Meetings of the stockholders of each corporation were held after July 22, 1935 at which the capital stock was voted. The balance sheet of each company carried a capital stock account for each of the years 1939, 1940 and 1941. John W. Stinson and Calvin L. Stinson continued their practice of endorsing the *29 notes of the company after July 22, 1935 as they had prior thereto. For each of the calendar years 1936, 1937 and 1938 Wass and Stinson Canning Company reported all income for Federal tax purposes on a partnership return, Form 1065. For the taxable year 1939, the Stinson Canning Company reported the income on a partnership return, the name "Wass" being dropped from the firm name to avoid confusion in mail service since Wass was again in business in the State of Maine. The aforesaid 1939 partnership return reported gross receipts of $506,591.82, gross profit from operations of $159,547.87, other income amounting to $9,498.10, deductions aggregating $106,074.90, and ordinary income of $62,971.07, which was divided equally between John W. and Calvin L. Stinson as partners. Financial statements submitted to the Bar Harbor Banking & Trust Co., for credit purposes in 1938 and 1939 stated that the business was being operated as a partnership. Social security and unemployment tax returns filed during the years 1936 to 1939, inclusive, were filed as partnership returns. Following the death of John W. Stinson in 1940 the Probate Court decreed that Calvin L. Stinson, as surviving partner, *30 "be authorized to close the affairs of the estate of the late partnership," i.e., Stinson Canning Company, upon giving bond in the sum of $40,000. After the death of John W. Stinson, the assets of the business were sold or split up equally between the members of the family consisting of Calvin L. Stinson, his mother, his wife, and six minor children, the oldest of whom was age 12 in 1940. The interest acquired by each child in the business was reflected by a charge account on the books. No corporate income, declared value excess-profits tax, or capital stock tax returns were filed by either petitioner for the taxable year 1939. For Federal tax purposes each of the petitioners was a corporation engaged in transacting business during 1939. The adjusted net income of Wass and Stinson Canning Company and of Addison Packing Company for 1939 was $44,291.57 and $20,060.77, respectively. During the taxable year 1939 John W. Stinson and Calvin L. Stinson devoted all their time to the business of the petitioners. They worked long hours, 7 a.m. to 6 p.m. six days a week, and when business was pressing Calvin L. Stinson worked as late as 2 a.m. They bought all raw materials and supplies, *31 sold the manufactured products, financed the operations and managed two canning plants, one for fresh and one for sait fish, a ground fish plant, and two lobster departments. The petitioners' plants were situated along the Maine coast for a distance of 75 to 80 miles. Calvin L. Stinson made trips to New York, Chicago, Boston and Bangor to meet buyers and sell petitioners' products. John W. Stinson sold only to buyers in Maine. Plant superintendents or production managers operated the plants in the absence of the two Stinsons, and were paid a basic salary and a bonus based on a percentage of the net profits of the plant managed. John W. Stinson and Calvin L. Stinson rendered valuable personal services to each petitioner during the taxable year. A reasonable allowance as compensation therefor would be $12,500 each for Wass and Stinson Canning Company and $6,250 each for Addison Packing Company. No salary was actually paid either employee by either corporation but earnings of the businesses were credited to their salary accounts and such earnings were unqualifiedly subject to the demands of John W. and Calvin L. Stinson. In determining their taxable net incomes for 1939 petitioners *32 are entitled to deduct as ordinary and necessary expenses the salaries allowed herein to John W. and Calvin L. Stinson for services actually rendered by said employees. Opinion The first question is whether, for Federal tax purposes, petitioners are corporations or a partnership. Petitioners assert that they operated as a partnership during 1939 (1) since prior thereto, and in 1935, they complied with the statutory procedure in Maine and filed certificates showing that they had ceased transacting business as corporations; (2) a parol partnership created by agreement of the parties is qualified to transact a business formerly carried on in a corporate capacity; and (3) the Probate Court of Maine has made a final and binding adjudication to the effect that decedent, John W. Stinson's interest in the Stinson Canning Company was a partnership interest. We are unable to agree with the petitioners. The certificates filed with the Maine officials did not purport to dissolve the corporations. Petitioners do not even contend that the certificates filed with the Maine officials effected a dissolution. Their claim is that the corporations were put to sleep, i.e., became dormant, and could *33 not therefore transact any business. None of the cases cited by the parties, Chilhowee Mills, 47 B.T.A. 682; Seattle Renton Lumber Co. v. United States, 135 Fed. (2d) 989; Rice-Sturtevant Automobile Company, 6 B.T.A. 793, or examined by us, Hub Shoe Company, 2 B.T.A. 836; Roe Stephens Manufacturing Company, 12 B.T.A. 1254; Calvin Zimmerman and Wife, 31 B.T.A. 754; John Crocker et al., 32 B.T.A. 861, affirmed 84 Fed. (2d) 64, and Chilhowee Mills, Inc. et al., 4 T.C. 558 (on appeal to CADC *), involved a similar situation. Obviously the stockholders in the Seattle Renton case, supra, went much farther than the stockholders here. There, the corporation conveyed its realty by deed and its personalty by bill of sale, all pursuant to resolutions adopted at a duly called meeting. The transferee of the realty concurrently executed a declaration of trust which named the partners and their respective interests in the property. The partnership operated at Seattle Renton Mill Co., kept separate records from the former corporation, changed the names on its buildings, motor vehicles, *34 stationery, forms, etc. and notified inquiring customers and others that the business was operated by a partnership. Likewise in the Chilhowee Mills cases, supra, the facts are distinguishable. There the charter had been surrendered and the stockholders agreed that they would continue the business as partners. New books of account were opened showing the interest of each partner and the business was carried on in the name of the partnership. We held the income from the operation of the business after dissolution was taxable to the partners. Later, the trustees in dissolution sold assets of the corporation at a profit, and we decided in 4 T.C. 558 that the gain was taxable to the corporation and not the partners. Here, our findings show that the business operations of the corporations continued unchanged after the filing of the certificates. See Roe Stephens Mfg. Co.; John Crocker; and Zimmerman cases, supra. The capital stock remained outstanding and was voted at meetings held by each corporation subsequent to 1935. The corporate books of account continued to be used. No new accounts were set *35 up on these books to evidence any change. No partnership books of account were set up. Ownership, possession and enjoyment of all corporate property remained in the corporations. Letterheads of the corporations continued in use. No general notice was given customers or creditors announcing that the businesses were being conducted by a partnership. The balance sheets of both Stinson Canning Company and Addison Packing Company for 1939, 1940 and 1941 carried capital stock accounts as liabilities. The evidence relied upon by petitioners can, in our opinion, be explained away or is outweighed, by the other evidence of record. The various returns filed on a partnership basis indicate a consistent position but do not prove the character of the business conducted in 1939. The erroneous characterization is more easily understood if it is borne in mind that the two Stinsons were equal partners in J. W. Stinson & Son, which owned all the capital stock of the petitioners. Petitioners' compliance with the laws of Maine in order to escape franchise taxes is in no way conclusive of their Federal tax liability. No question was contested nor was there any judicial determination. The subsequent acts *36 of the corporations, their officers and stockholders, and the manner in which the business was conducted thereafter are of much more probative value. Petitioners' second point is, in our opinion, inapplicable. The question here is not whether an oral partnership can conduct the businesses formerly carried on by corporations, but whether the income from the businesses carried on is taxable to the corporations. As heretofore indicated, we are convinced that no partnership, oral or otherwise, succeeded to or took over the corporate businesses and assets. In our opinion the corporations continued to transact their businesses. The third point urged upon us by petitioners is that the decree of the Probate Court is a final and binding adjudication that decedent John W. Stinson's interest in the Stinson Canning Company was a partnership interest. We do not agree. The decree was not based upon any contested issue. The Probate Court merely authorized the surviving partner to close up the affairs of the estate of the late partnership. We do not understand such a decree to be a final and binding adjudication which fixes the character of the business for Federal income tax purposes. Tatem Wofford, 5 T.C. 1152. *37 It has been frequently stated that the Federal revenue laws have their own criteria for the determination of Federal tax liability. Our findings show that neither petitioner filed corporate returns as required by law for the taxable year. Section 291 of the Internal Revenue Code provides that in case of any failure to make and file a return within the time prescribed by law unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the tax an amount (under the present circumstances) not exceeding 25 per centum in the aggregate. The burden of establishing that failure to file timely returns was due to reasonable cause rests upon the petitioners. No showing has been made of any efforts on their part to get advice or secure a ruling on their status. Reliance upon the belief and conclusions of the stockholders that the businesses were being operated by them as a partnership is insufficient under the statute to constitute proof that reasonable cause existed for their failure to file the timely returns required by law. West Side Tennis Club v. Commissioner, 111 Fed. (2d) 6 certiorari denied, *38 311 U.S. 674, affirming 39 B.T.A. 149; The P. Dougherty Co., 5 T.C. 791, promulgated September 24, 1945. We approve the respondent's application of section 291. Petitioners' alternative contention involves the amounts deductible, if any, as a reasonable allowance for salaries or other compensation for personal service actually rendered during 1939 by the two Stinsons. Respondent objects that the issue is not raised by the pleadings, and secondly, if raised, petitioners have failed to sustain their burden of proof. We do not agree with either objection. The amended pleadings allege that the entire amount of net income determined by respondent is deductible expense. The statute permits a taxpayer to deduct, as an ordinary and necessary business expense, a reasonable allowance for salaries or other compensation paid or incurred for personal services actually rendered. What constitutes a reasonable allowance deductible as and item of expense becomes, therefore, a matter of proof. There is ample proof in this record that the personal services rendered by the two Stinsons to the petitioners were very valuable. They worked long hours. They purchased *39 the raw materials and supplies used in the several plants operated by the petitioners. They supervised and managed the operation of the several plants and sold the products thereof in Maine, Boston, New York and Chicago. The gross receipts for the taxable year exceeded a half million dollars and their adjusted net income totalled in excess of $64,000. Considering these and other facts of record we have determined that $25,000 is a reasonable allowance to Wass and Stinson Canning Company for the personal services actually rendered by John W. Stinson and Calvin L. Stinson, and that $12,500 is a reasonable allowance to Addison Packing Company for the personal services actually rendered to it by the two Stinsons. The deficiencies should be recomputed in accordance with the foregoing. Decision will be entered under Rule 50. Footnotes
*. TC decision reversed by CA of DC, 152 Fed. (2d) 137↩.