T.C. Memo. 2000-189

UNITED STATES TAX COURT

THOMAS C. SANDOVAL, JR. AND BOBBIE J. SANDOVAL, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 21220-96.                    Filed June 27, 2000.

Thomas C. Sandoval, Jr., pro se.

<u>Elizabeth A. Owen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income tax and additions to tax and
penalties as follows:

| | | Additions to tax and penalties | | |
|------|------------|-----------------|--------------|--------------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6661(a) | Sec. 6662(a) |
| 1985 | $27,673    | $3,362          | $6,918       | --           |
| 1987 | 21,865     | 2,722           | 5,466        | --           |
| 1989 | 10,017     | --              | --           | $2,003       |
| 1990 | 50,643     | 10,910          | --           | 10,129       |

Respondent filed an amended answer asserting that petitioners' tax liability is as follows:[1]

| | | Additions to tax and penalties | | |
|------|------------|-----------------|--------------|--------------|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6661(a) | Sec. 6662(a) |
| 1985 | $27,642    | $3,889          | $3,888       | --           |
| 1987 | 21,865     | 2,935           | 2,935        | --           |
| 1989 | 10,017     | 2,420           | --           | $1,936       |
| 1990 | 50,643     | 10,911          | --           | 10,129       |

After concessions, the issues for decision are:

1.   Whether petitioners have a basis of $233,408 in additions to a building.  We hold that their basis in the additions is $20,000.

2.   Whether petitioners have a basis of $130,000 (or any other amount) in real property for two outdoor advertising signs on the property.  We hold that they do not.

3.   Whether the Babcock Road and Warfield Drive properties qualify under section 1033 as replacement property for property sold under threat of condemnation.  We hold that they do not.

4.   Whether petitioner placed certain vehicles in service when he bought them for his business, as respondent contends, or when he began to use them in his business, as petitioners

---

[1]  Respondent bears the burden of proof with respect to new matter alleged in the amended answer.  Rule 142(a).

contend. We hold that petitioner placed the vehicles in service when he bought them for his business.

5. Whether petitioners may deduct depreciation for their business property in an amount greater than respondent allowed. We hold that they may not.

6. Whether petitioners may claim net operating loss carrybacks or carryforwards or investment tax credit carryforwards for the years in issue. We hold that they may not.

7. Whether petitioners are liable for an addition to tax under section 6651 for failure to timely file their Federal income tax returns for the years in issue. We hold that they are.

8. Whether petitioners are liable for additions to tax for substantial understatement of income tax under section 6661 for 1985 and 1987 and for accuracy-related penalties for substantial understatement of tax under section 6662(b)(2) and (d) for 1989 and 1990. We hold that they are for the years they substantially underpaid tax.

References to petitioner are to Thomas C. Sandoval, Jr. Section references are to the Internal Revenue Code in effect during the years in issue. Unless otherwise noted, Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.    Petitioners

Petitioners lived in San Antonio, Texas, when they filed their petition.

During the years in issue, petitioner was sole proprietor of Allied Electric and Air Conditioning Co. (Allied Electric) located on Hoefgen Avenue (Hoefgen Avenue property) in San Antonio.  There was a billboard and a commercial sign (the two outdoor advertising signs) on the Hoefgen Avenue property.

Petitioner bought the following vehicles for Allied Electric because he thought he needed them for contracts on which he had bid, but which he did not win:

| Vehicle | Date acquired |
|---|---|
| 1973 Ford Digger | October 1982 |
| 1972 Ford Bucket truck | February 1983 |
| 1977 GMC Bobtail | April 1983 |
| 1977 GMC Bobtail | April 1983 |
| 1985 Ram Charger | October 1984 |

He maintained them, but he did not register or insure them until he began to use them for his business in 1985.

B.    The Hoefgen Avenue Property

1.    Addition of Storage Space and Office

Between January 1, 1982, and December 31, 1984, petitioner added warehouse storage space and an office addition to the second story of the Hoefgen Avenue property.  Richard Zamora (Zamora) drafted plans for the storage space addition in November

1981 and plans for the office addition in March 1983 and oversaw construction of both. Petitioner signed the building permit for the office addition which stated that the addition was estimated to cost $10,400.

Petitioners' county property tax statement states that improvements (i.e., everything but the land) at the Hoefgen Avenue property were worth $112,020 in 1984 and $158,800 in 1985 and 1986.

2. Condemnation Sale of the Hoefgen Avenue Property

The City of San Antonio threatened to condemn the Hoefgen Avenue property in the summer of 1990. Petitioner hired John Neal (Neal), a real estate appraiser, to appraise the improvements on that property. Neal estimated that the replacement cost of those improvements as of June 8, 1990, was as follows:

| Structures | Replacement cost |
|---|---|
| Office building | $193,011 |
| Transit warehouse | 77,012 |
| Additions (e.g., sheds, fans & openers, canopy area, stairs, fencing, etc.) | 36,499 |
| Total | 306,522 |

The City of San Antonio bought the Hoefgen Avenue property under threat of condemnation for $425,000 on September 17, 1990. Petitioner received net proceeds of $371,486 from the sale (the condemnation proceeds). Petitioner elected to defer the gain he

realized from the condemnation sale by buying replacement property under section 1033.

## C. Properties That Petitioners Contend or That Respondent Concedes Are Replacement Properties

### 1. Properties That Respondent Concedes Are Replacement Properties

Petitioner bought real property on Jones Maltsberger Road (Jones Maltsberger Road property) in San Antonio on September 26, 1990, and 3.164 acres of land in Bexar County on October 7, 1991. Respondent concedes that these properties qualify under section 1033 as replacement properties for the Hoefgen Avenue property.

### 2. The Babcock Road Property

Gary A. Burnett (Burnett) and petitioner each paid a total of $84,107 to buy 1.329 acres of real property on Babcock Road (Babcock Road property) in San Antonio. They made those payments on October 30 and December 2 and 3, 1991. On December 4, 1991, petitioner and Burnett agreed in writing (Babcock Road property agreement) to create a joint venture called "TGR Partnership a Texas general partnership" (TGR I), with a principal place of business at the Jones Maltsberger Road property. Petitioner and Burnett signed Exhibit A to the Babcock Road property agreement which states: "This partnership is formed for the purpose of purchasing the property as described in Exhibit 'B'". Exhibit B describes the Babcock Road property. The Babcock Road property agreement provided: (a) "Joint venture I" began on December 3,

1991; (b) its purpose was short-term investment (6 to 12 months) in the Babcock Road property; (c) all allocations would be 50 percent each to petitioner and Burnett; (d) real property was to be owned in the name of the joint venture or any joint venturer as nominee or trustee of the joint venture; (e) each joint venturer waived the right to partition joint venture property; (f) the joint venturers had equal right to control and manage the Babcock Road property; (g) the joint venturers' rights to sell, assign, transfer, encumber, or otherwise dispose of interests in the Babcock Road property were restricted; and (h) each of the joint venturers had the option to buy the other's interest upon the other's death, adjudication of the other's incompetency, the other's bankruptcy, or gift of part or all of the other's interest in the property.

The Babcock Road property settlement statement dated December 5, 1991, names TGR I as the borrower for the property.

On March 20, 1992, petitioner registered TGR I as his assumed name. Petitioner did not include Burnett's name on the assumed name certificate. A City of San Antonio statement of property taxes for 1992 lists the TGR I as the owner of record of the Babcock Road property.

On December 15, 1992, petitioner and Burnett sold the Babcock Road property for $318,000 plus $429 in taxes. The settlement statement listed TGR I as the seller. Petitioner and

Burnett each signed the settlement statement as a partner of TGR I. The settlement company issued two checks for $143,250 each payable to TGR I. Petitioner and Burnett each endorsed one check payable to the other.

    3.  <u>The Warfield Drive Property</u>

On May 14, 1993, petitioner and Burnett agreed to form a joint venture under the name "TGR Partnership a Texas general partnership" (TGR II) to buy real property to hold for 3 to 5 years to generate rental income.

On May 17, 1993, petitioner and Burnett signed a written agreement (Warfield Drive property agreement), and bought property on Warfield Drive (Warfield Drive property) in San Antonio. On May 17, 1993, petitioner and Burnett each paid about $123,000 for a 50-percent interest in TGR II. Petitioner and Burnett signed Exhibit A to the Warfield Drive property agreement which states: "This partnership is formed for the purpose of purchasing the property as described in Exhibit 'B'". Exhibit B describes the Warfield Drive property. The Warfield Drive property settlement statement identified "Gary Burnett and Tom Sandoval dba TGR and Partnership" as the borrower for the property. The Babcock Road and Warfield Drive property agreements are identical except for the description of, and the stated purpose for holding, the properties.

D.   Petitioners' Tax Returns

Petitioners asked to extend the times to file, deposited amounts with their requests, and filed their returns for the years in issue as follows:

| Tax year | Date of request | Amount of deposit | Date extension granted to | Date petitioners filed |
|---|---|---|---|---|
| 1985 | Apr. 15, 1986 | $14,000 | Aug. 15, 1986 | Sept. 20, 1993 |
| 1987 | Apr. 15, 1988 | 10,000 | Aug. 15, 1988 | Sept. 27, 1993 |
| 1989 | Apr. 15, 1990 | | Aug. 15, 1990 | |
| 1989 | Aug. 15, 1990 | | Oct. 15, 1990 | Oct. 1, 1993 |
| 1990 | Apr. 15, 1991 | 7,000 | Aug. 15, 1991 | |
| 1990 | Aug. 15, 1991 | | Sept. 16, 1991 | Oct. 1, 1993 |

The following chart shows the amount of the depreciation and section 179 deductions that petitioners' accountant calculated and that petitioners reported on Schedules C, Profit or (Loss) From Business or Profession, of petitioners' returns for 1985, 1987, 1989, and 1990:

### Depreciation and Section 179 Deductions

| Year | Accountant's schedules | Petitioners' Schedules C |
|---|---|---|
| 1985 | $48,855 | $51,308 |
| 1987 | 54,789 | 53,513 |
| 1989 | 47,693 | 53,413 |
| 1990 | 35,741 | 59,463 |

Petitioners filed their 1983 return in 1992 and their 1984, 1986, and 1988 returns in 1993.  Petitioners claimed 3 months depreciation for the Ram Charger on their 1984 return.

On Schedules E, Supplemental Income Schedule, of their Federal individual income tax returns for 1993, 1994, 1996, and

1997, petitioners reported nonpassive income or loss relating to TGR II in the partnership income section.

OPINION

A.  Whether Petitioners Have a Basis of $233,408 in the Storage and Office Additions to the Hoefgen Avenue Property

Petitioners contend that they paid $233,408 in the early 1980's to add storage and office space to the Hoefgen Avenue property.  Respondent contends that petitioners have failed to show that they are entitled to any basis in the additions to the Hoefgen Avenue property.[2]

Petitioners rely in part on Zamora's and Neal's testimony to substantiate their basis for the storage and office additions.[3] Zamora credibly testified that he designed and oversaw the construction of the storage addition at the Hoefgen Avenue property in 1981 and 1982, and the office addition in 1983 and 1984.  Zamora testified that the storage addition was not significant because petitioners did not change the exterior or roof structure of the building.  Zamora did not testify about the cost of the additions.  Neal estimated that the replacement cost

---

[2]  Respondent allowed depreciation deductions for 15-year property costing $22,895, for 5-year property costing $12,083, and for 3-year property costing $48,044, which petitioners reported on their 1982 return was placed in service in 1981 and 1982.

[3]  Petitioners offered no evidence to prove their contention that they lost petitioner's records when moving to the Jones Maltsberger Road property.

of all improvements to the Hoefgen Avenue property was $306,522 as of June 8, 1990.  He did not estimate how much petitioners spent to build the storage and office additions.

Petitioners point out that the Bexar County property tax statements for the Hoefgen Avenue property show that the improvements to that property were worth $112,020 in 1984 and $158,800 in 1985 and 1986.  Petitioners also point out that petitioner signed a building permit which states that the estimated cost for the office addition was $10,400.  These facts are not sufficient evidence of basis.

Respondent contends that the record provides no basis to estimate petitioners' costs for the storage and office additions. We disagree.  We may estimate petitioners' basis in those additions "bearing heavily * * * upon the taxpayer whose inexactitude is of his own making."  See Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930), affg. in part and remanding 11 B.T.A. 743 (1928); see also Bayou Verret Land Co. v. Commissioner, 450 F.2d 850, 858 (5th Cir. 1971), affg. 52 T.C. 971 (1969).  We estimate that petitioners paid $20,000 to add the office and that it was completed in 1984.  Petitioners may increase their basis in the Hoefgen Avenue property for the office addition using a 15-year useful life and a placed-in-service date of July 1984.

We do not have sufficient information to estimate how much petitioners paid for the storage addition that was completed in 1982.  Also, petitioners have failed to show that they did not include the cost of the storage addition on the depreciation schedule attached to their 1982 return, for which respondent already concedes an allowance for depreciation.  Finally, petitioners have not shown that they did not fully depreciate the cost of the storage addition before 1985.  Thus, petitioners may not increase their basis in the Hoefgen Avenue property for 1985 or any later year to include any costs of building the storage addition.

B.   Whether Petitioners Have Basis in the Hoefgen Avenue Property for Outdoor Advertising Signs

Petitioners contend that the two outdoor advertising signs on the Hoefgen Avenue property had a future contract value of $130,000 and that we should increase their basis in the Hoefgen Avenue property by that amount.  We disagree.

The basis of property is generally its cost.  See sec. 1012; Better Beverages, Inc. v. United States, 619 F.2d 424, 428 (5th Cir. 1980); Winn-Dixie Montgomery, Inc. v. United States, 444 F.2d 677, 683-684 (5th Cir. 1971).  Future contract value is not the cost of the two outdoor signs.[4]  There is no evidence of the

---

[4]  Future contract value is not a proper grounds for computing gain.  See sec. 1012; Better Beverages, Inc. v. United States, 619 F.2d 424, 428 (5th Cir. 1980); Winn-Dixie Montgomery,
(continued...)

cost of the signs, who paid for them, or when those payments were made.  We conclude that petitioners may not increase the basis in the Hoefgen Avenue property based on the future contract value of the two outdoor signs.

C.   Whether the Babcock Road and Warfield Drive Properties Qualify as Replacement Property for the Hoefgen Avenue Property Under Section 1033

1.   Background and Contentions of the Parties

A taxpayer who sells under threat of condemnation real property held for business use or investment may defer recognition of the gain if he or she buys property of like kind to the converted property within 3 years after the closing of the first taxable year in which any part of the gain from the sale is realized.  See sec. 1033(a)(1), (g)(1), and (g)(4).  Principles used for deciding whether an exchange is like kind under section 1031 also apply in deciding whether replacement property is property of a like kind under section 1033.  See sec. 1.1033(g)-1(a), Income Tax Regs.  An exchange of a fee interest in real property for an interest in a partnership does not qualify as an exchange of like-kind property.  See M.H.S. Co. v. Commissioner, T.C. Memo. 1976-165, affd. 575 F.2d 1177 (6th Cir. 1978); sec. 1.1031(a)-1(b), Income Tax Regs.

---

[4](...continued)
Inc. v. United States, 444 F.2d 677, 683-684 (5th Cir. 1971).

Petitioners contend that they may defer all of their gain from the sale of the Hoefgen Avenue property because they bought replacement properties that qualify under section 1033. Respondent contends that petitioners used proceeds from the Hoefgen Avenue sale to buy interests in partnerships and not in real property. Petitioners contend that petitioner and Burnett bought the Babcock Road and Warfield Drive properties, then decided to form a joint venture to manage them. We disagree with petitioners.[5]

    2.    <u>Whether Petitioner Acquired an Interest in the Babcock Road and Warfield Drive Properties, or an Interest in Partnerships</u>

Petitioners contend that petitioner and Burnett acquired an interest in and held the Babcock Road and Warfield Drive properties in fee simple as tenants in common. Petitioner and Burnett testified that they did not intend to form partnerships until after they bought the real property. However, we give more weight to the objective facts than to that testimony. The objective facts, such as the written agreements and petitioner's and Burnett's conduct, show that petitioners formed a partnership under Texas and Federal law, that the partnerships acquired the

---

[5] In light of our conclusion, we need not decide respondent's contention that the rule stated in <u>Commissioner v. Danielson</u>, 378 F.2d 771, 775 (3d Cir. 1967), vacating and remanding 44 T.C. 549 (1965) (the <u>Danielson</u> rule), precludes petitioners from claiming that their interests in the Babcock Road and Warfield Drive properties are not partnership interests.

properties, and that petitioner used the proceeds from the Hoefgen Avenue sale to buy partnership interests.

Under Texas law, a partnership is "an association of two or more persons to carry on as co-owners a business for profit." Tex. Rev. Civ. Stat. Ann. art. 6132b, sec. 6(1) (West 1990).[6]  For Federal tax purposes, generally, a partnership exists when persons combine their money, goods, labor, or skill to carry on a trade, profession, or business and there is a community of interest in the profits or losses.  See Commissioner v. Culbertson, 337 U.S. 733, 742 (1949); see also sec. 7701(a)(2). Under Texas law, a joint venture is in the nature of a partnership, but it is usually limited to one particular enterprise.  See State v. Houston Lighting & Power Co., 609 S.W.2d 263, 267 (Tex. Civ. App. 1980).

        a.    The Babcock Road Property

Petitioners contend that they acquired the Babcock Road property as cotenants.  They contend the fact that they labeled TGR I as a partnership does not control.  See, e.g., Coastal Plains Dev. Co. v. Micrea, Inc., 572 S.W.2d 285, 288 (Tex. 1978); Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d 576, 586 (Tex. App. 1999); Ben Fitzgerald Realty Co. v. Muller, 846 S.W.2d 110, 121-122 (Tex. App. 1993).  They point out that coownership of

---

        [6]  Texas adopted the Texas Uniform Partnership Act (TUPA) in 1961, effective Jan. 1, 1962.  See Humphrey v. Bullock, 666 S.W.2d 586, 588 (Tex. App. 1984).

property is not necessarily a partnership.  See Demirjian v. Commissioner, 54 T.C. 1691, 1697 (1970), affd. per curiam 457 F.2d 1 (3d Cir. 1972).  We disagree that petitioner  and Burnett acquired the Babcock Road property as cotenants.

Petitioners contend that petitioner and Burnett formed TGR I after they bought the property to help manage it.  We disagree.  Petitioner and Burnett formed TGR I on December 3, 1991, according to the terms of the written agreement which they signed the following day.  Under Texas law, a partnership can exist without a written agreement.  See Valero Energy Corp. v. Teco Pipeline Co., supra at 584-585; Shindler v. Marr & Associates, 695 S.W.2d 699, 703 (Tex. App. 1985); Cavazos v. Cavazos, 339 S.W.2d 224, 226 (Tex. Civ. App. 1960).

The written agreement that they signed on December 4, 1991, stated that their "Joint Venture I" began on December 3, 1991.  In the written partnership agreement, petitioner and Burnett agreed (1) to contribute equal sums to own equal interests in TGR I; (2) to share equally in profits, and bear equal responsibility for losses in TGR I; (3) that TGR I would own the real property; (4) to waive their rights to require partition of partnership property; (5) to share equally management and control over TGR I; and (6) to restrict transferring their interests in TGR I.  They specified a principal place of business.  They acquired the Babcock Road property in the name of TGR I, then sold it for a

profit and divided the net proceeds equally.  Thus, petitioner and Burnett formed TGR I as a partnership to hold real property for profit.

Real property acquired in the name of the partnership is partnership property.  See Tex. Rev. Civ. Stat. Ann. art. 6132b, sec. 2.05(a)(1) (West 1999).  A copy of the deed for the Babcock Road property is not in the record.  However, it appears from the settlement documents that TGR I bought the Babcock Road property on December 5, 1991, in TGR I's name.  Petitioners do not dispute this fact.  A City of San Antonio statement of property taxes for 1992 states that TGR I was the owner of record of the Babcock Road property.  The documents evidencing the sale of the Babcock Road property name TGR I as the seller.  Thus, TGR I, and not petitioner and Burnett, acquired and held title to the Babcock Road property.  See Tex. Rev. Civ. Stat. Ann. art. 6132b, sec. 2.05(a)(1) (West 1999).

We conclude that the Babcock Road property does not qualify as replacement property for the Hoefgen Avenue property under section 1033.

b.  The Warfield Drive Property

Petitioners contend that they acquired the Warfield Drive property as cotenants.  Petitioners point out that petitioner and Burnett testified that they did not intend to form a partnership. The objective facts show otherwise.

Petitioner and Burnett agreed to form TGR II on May 14, 1993. They signed the Warfield Drive property agreement on May 17, 1993, which memorialized their May 14, 1993, agreement. The terms of the Warfield Drive property agreement are essentially the same as those in the Babcock Road property agreement, except for the purpose for acquiring the real property. Exhibits A and B to the Warfield Drive property agreement state that petitioner and Burnett formed TGR II to acquire the Warfield Drive property. The Warfield Drive property agreement stated that petitioner and Burnett intended to collect rental income from that property for many years and to hold it to appreciate in value. TGR II bought and held the Warfield Drive property to carry on a business. Petitioner and Burnett adopted the TGR name, acquired the property under that name, and held out TGR II as a partnership. Petitioners reported active partnership income and loss from TGR II for 1993, 1994, 1996, and 1997. Petitioner and Burnett intended to and did operate a real estate rental business together.

Petitioners contend that TGR II did not buy the Warfield Drive property because petitioner and Burnett signed the joint venture agreement after they bought the property. We disagree. The written agreement that petitioner signed on May 17, 1993, states that Burnett and petitioner agreed on May 14, 1993, to establish TGR II to buy and hold rental real property for 3 to 5

years.  The record does not show whether petitioner and Burnett signed the agreement or bought the property first.  However, both of those events occurred on May 17, 1993, after they agreed to form the partnership.

Petitioners contend that petitioner and Burnett took title to the Warfield Drive property in their individual names.  A copy of the deed is not in the record, and it is not clear how title to the Warfield Drive property is recorded.  The settlement statement shows "Gary Burnett and Tom Sandoval dba TGR and Partnership" as borrowers.  However, even if we assume that title to the Warfield Drive property is recorded in petitioner's and Burnett's names, we believe that they were TGR II's agents when they bought the Warfield Drive property.  The property agreement provides for buying and renting out one parcel of real property for 3 to 5 years and that the property of TGR II may be held in the name of petitioner or Burnett.  Under Texas law, title to partnership property may be held in the name of the partnership or in the name of one or more of the partners.  See Tex. Rev. Civ. Stat. Ann. art. 6132b, sec. 10 (West 1990).  Partnership property, nonetheless, belongs to the partnership and not to the individual partners.  See Littleton v. Littleton, 341 S.W.2d 484, 488 (Tex. Civ. App. 1960); In re Cooper, 128 Bankr. 632, 636 (Bankr. E.D. Tex. 1991).

Petitioners point out that petitioner filed a certificate of assumed name for "TGR" without including Burnett's name and contend that this shows that Burnett and petitioner were not partners in TGR II. We disagree. This fact is not enough to convince us that petitioner and Burnett did not use condemnation proceeds to pay for an interest in the partnership known as TGR II which in turn bought and owned the Warfield Drive property. Also, the assumed name certificate does not affect TGR II because petitioner and Burnett created the TGR II partnership after petitioner filed the assumed name certificate.

We conclude that petitioners acquired an interest in TGR II and that the Warfield Drive property was an asset of TGR II, not an asset owned as tenants in common by the joint venturers. Thus, the Warfield Drive property does not qualify as replacement property for the Hoefgen Avenue property under section 1033.

D. <u>Whether the Placed-In-Service Date for a Vehicle Is the Date Acquired or the Date Used in Business</u>

The parties disagree about when petitioner placed five vehicles in service for depreciation purposes. Petitioners contend that the placed-in-service date for each vehicle is the date petitioner began using the vehicle in his business. We disagree.

Generally, an asset is placed in service for depreciation purposes when it is acquired and available for use in business even if it is not actually used in the business. See <u>Sears Oil</u>

Co. v. Commissioner, 359 F.2d 191, 198 (2d Cir. 1966), affg. in part, revg. in part, and remanding T.C. Memo. 1965-39; P. Dougherty Co. v. Commissioner, 159 F.2d 269 (4th Cir. 1946), affg. 5 T.C. 791 (1945). All five vehicles were available for use in petitioner's business when he bought them. Petitioner placed each vehicle in service for depreciation purposes when he bought it.

E.  Whether Petitioners May Deduct More Depreciation for
    Business Property Than Respondent Allowed

Petitioners contend that they may depreciate shop and office equipment in amounts greater than they claimed on their returns for the years in issue and greater than respondent allowed. Petitioners contend that respondent did not allow them to depreciate certain shop and office equipment that had useful lives and cost bases which had not been fully recovered as of the beginning of 1985. We disagree. Petitioners did not identify the equipment to which their contention applies or show that respondent had not already allowed a depreciation deduction for that equipment.

F.  Whether Petitioners May Deduct Net Operating Loss
    Carryforwards and Carrybacks and Use Investment Tax Credit
    Carryforwards

Petitioners contend they may deduct net operating loss (NOL) carryforwards and carrybacks and use investment tax credit carryforwards. We disagree. Petitioners must prove the amount of the NOL carryforward or carryback deductions claimed and that

their gross income in other years did not offset those losses. See <u>Jones v. Commissioner</u>, 25 T.C. 1100, 1104 (1956), revd. and remanded on other grounds 259 F.2d 300 (5th Cir. 1958).

Dan Mitchell, petitioners' return preparer, testified that petitioners' tax returns show that they are entitled to NOL carryforwards and carrybacks and investment tax credit carryforwards. Tax returns alone do not establish that a taxpayer is entitled to NOL carryforwards or carrybacks or investment tax credit carryforwards. See <u>Wilkinson v. Commissioner</u>, 71 T.C. 633, 639 (1979); <u>Roberts v. Commissioner</u>, 62 T.C. 834, 837, 839 (1974). Petitioners offered no other evidence about their NOL carryforwards or carrybacks or investment tax credit carryforwards. We conclude that petitioners may not claim NOL carryforward or carryback deductions or investment tax credits carried forward to the years in issue.

G.  <u>Whether Petitioners Are Liable for the Addition to Tax for Late Filing</u>

Petitioners contend that they are not liable for the addition to tax under section 6651(a)(1) for their failure to file timely their income tax returns for each year in issue because:  (1) They correctly reported that there was no tax due for the years in issue, (2) they had reasonable cause to file their returns late because petitioner had problems keeping office staff who could provide the necessary information to help prepare

the returns and it took him additional time to replace his return preparer, and (3) they showed their good faith by filing timely extension requests and by paying cash deposits with those requests. We disagree.

Petitioners are liable for an addition to tax for failure to timely file a tax return unless they show that their failure to timely file is due to reasonable cause and not due to willful neglect. See sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).

Petitioners had extensions of time to file their returns for the years in issue, but they filed them long after the extended time had passed. Making cash deposits does not substitute for timely filing a return. Petitioners did not show that they had reasonable cause to file their returns late or that they exercised good faith in filing their returns. Thus, petitioners are liable for the additions to tax for failure to timely file their tax returns for each year in issue.

H.  Whether Petitioners Are Liable for the Addition to Tax or
    Penalty for Substantial Understatement

Petitioners contend that they are not liable for additions to tax for substantial understatement of tax under section 6661(a) for 1985 and 1987 and accuracy-related penalties for substantial understatement of tax under section 6662(b)(2) and (d) for 1989 and 1990 because they had reasonable cause for the understatements and they acted in good faith. They rely on their

reasons for failing to file timely, which we have found to be unconvincing.  Petitioners do not contend that they had substantial authority for the understatements or that their tax returns disclosed enough facts to enable respondent to identify the potential controversy.  See sec. 6662(d)(2)(B); <u>Schirmer v. Commissioner</u>, 89 T.C. 277, 285-286 (1987).  We conclude that petitioners are liable for the additions to tax under section 6661(a) for 1985 and 1987 and the accuracy-related penalties under section 6662(b)(2) and (d) for 1989 and 1990 if the calculations under Rule 155 show that the understatements are substantial for purposes of section 6661(a) or section 6662(d)(1).

To reflect concessions and the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.