**FIDELITY STORAGE CORPORATION v. BURNET, Commissioner of Internal Revenue.**

No. 5340.

Court of Appeals of the District of Columbia.

Argued March 8, 1932.

Decided April 4, 1932.

Charles H. Merillat, Ben Jenkins, and David J. Shorb, all of Washington, D. C., for appellant.

Sewall Key, G. A. Youngquist, J. L. Monarch, J. G. Remey, C. M. Charest, and W. E. Davis, all of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

VAN ORSDEL, Associate Justice.

This appeal is from a judgment of the Board of Tax Appeals determining deficiency in income tax against the appellant corporation for the years 1918 to 1925, both inclusive.

The appellant conducts a storage business in a nine-story semifireproof building located at 1420 U Street N. W., Washington, D. C. About 1911 appellant leased a two-story brick and concrete addition to its warehouse to the Sealed Package Ice Company. This company installed an ice plant in the leased premises, and operated the same for about six weeks during the year 1911. The company was forced into bank-

ruptcy on October 9, 1911, and a trustee was appointed. The trustee, being unable to dispose of the assets of the bankrupt, finally effected a sale to Mr. Karrick, the president of appellant company. Karrick agreed to pay all expenses of the bankruptcy proceedings, $1,479 in cash to cover 10 per cent. of all open and unsecured accounts, to release a claim of his own in the amount of $11,120.74, and a claim of appellant corporation in the amount of $9,365.42, and to give a bond guaranteeing the trustee from any liability arising through claims which were then in litigation. On August 22, 1913, appellant company executed and delivered a release to the trustee in bankruptcy of all claims or demands of whatsoever description preferred or unpreferred, and discharged and released the trustee from all liability.

The litigation which Karrick assumed continued until 1920. Appellant's claim against the Ice Company was for rent, and it continued to charge rent at a rate of $375 per month until the year 1916, when $3,000 of the accumulated rent was charged off as a bad debt.

The record discloses that, when Karrick took over the equipment of the ice company in 1913, he placed a value on it of $40,000. Diligent efforts were made to dispose of this equipment, but without success. The plant and equipment was finally disposed of in 1918 and 1920 at a price which forced appellant company in 1918 to write off a loss of $9,365.12, and, in 1920, a loss of $3,562.50. These amounts are respectively claimed as deductions in the tax returns for the years 1918 and 1920. They were disallowed by the Board on the ground "that the transactions with the Sealed Package Ice Company were closed in 1913, and that no loss arising therefrom was deductible in either 1918 or 1920."

■ We think the Board was in error in this finding upon its own statement of facts. A loss or bad debt can only be determined or ascertained when the transaction in which it occurs has been completely closed. Here the purchase was made in 1913 with the hope of a profit.

Appellant concurred in the purchase made by its president, Karrick, releasing its claims against the bankrupt estate, and took its chance of recovering the amount of its claims from the sale of the property. Diligent efforts were made to dispose of the property purchased, but sales were not effected until 1918 and 1920. It was not until then that the transaction was completed or that the amount of the loss could be determined. This loss was sustained through debts owing appellant company and embraced within the purchase of the Sealed Ice Company equipment in 1913. Whether the debt was good or bad could not be ascertained until the sale of the property had been completed. Under Revenue Act 1918, § 234 (a) (5), 40 Stat. 1078, debts ascertained to be worthless and charged off within the taxable year are deductible in computing the net income of a corporation subject to taxation. It logically follows that a loss can only be determined as of the time when the exact amount can be ascertained. A bad debt is deductible at the time when the uncollectable amount of the claim can be definitely ascertained and determined. We are of opinion, therefore, that these claims should be allowed as proper deductions for the years 1918 and 1920, respectively.

■ Error is assigned on the valuation fixed by the Commissioner of Internal Revenue on the building of appellant company as of March 1, 1913. There was considerable conflict in the evidence adduced at the hearing as to the value of this building on the date in question. It appears that appellant company on May 29, 1914, wrote the taxing authorities of the District of Columbia that the value of the building on that date was $100,000 and that the building was for sale at that price. Karrick, the president of the company, in 1924, in a sworn affidavit to the Treasury Department, valued the building as of March 1, 1913, at $303,109.30, and appellant company carried the building on its books at $278,595.32. This was the value fixed by the Commissioner, and, owing to the conflict in the testimony and this being purely an issue of fact, we do not feel justified in disturbing the finding of the Commissioner.

Error is also assigned on the refusal of the Board to allow any annual deduction due to obsolescence and storage uses of appellant's building. The Commissioner allowed for depreciation on the building a rate of 2½ per cent. based upon the value found as of March 1, 1913, while the petitioner is contending for a rate of 3½ per cent. on a valuation of $450,000. We are of opinion that the facts justify the finding of the Commissioner in refusing any deduction for obsolescence and the amount allowed for de-

preciation. As to these items, the finding of the Board is sustained.

 Error is also assigned in the refusal of the Board to allow a deduction for certain alleged repairs claimed by the appellant company. As originally constructed, the building had iron grills across the front windows. In 1919 the cornice at the top of the building fell and damaged the original grills, which were replaced by new grills of a heavier design at a cost of $873.23.

The building as originally constructed had 17 skylights, which were raised above the roof level by parapets. By the year 1919 the skylights had become so deteriorated by the elements that reconstruction was necessary. The parapets were removed, the skylights were reset and reflashed at a cost of $2,800.

The same year $3,000· was expended on material and labor on the roof of the building. The roof was of concrete construction. Over the concrete were layers of roofing felt affixed with pitch or asphalt, and on the surface a layer of slag. It was found by the Board that a new felt and slag roof would cost approximately $4,500, and that the original felt was not entirely removed ·in 1919. The exact extent of the replacements of felt and slag, says the Board, is not shown. It was held by the Commissioned ·and the Board "that the money expended on grills, skylights, and roof was not in the nature of repairs and should be capitalized."

We think the finding was correct as to the grills, as no attempt was made to repair the original ones, but they were replaced by new grills of a different and heavier design. As to the skylights and roof, we think that this was clearly repair work. There was no substitution of a different material or structure. The new material was used where necessary to replace that which had become deteriorated by the elements and worthless. The ·skylights were replaced and reflashed, the defects in the roof were repaired where necessary by new felt and slag. This, we think, should clearly come within the classification of repair work. It was necessary to keep· the ·building in safe and efficient condition.

No allowance should be made for the grill work, but proper allowance should be made for the repairs on the skylight and the roof.

The decision of the Board is affirmed in part and reversed in part.