**P. DOUGHERTY CO. v. COMMISSIONER OF INTERNAL REVENUE.**

No. 5484.

Circuit Court of Appeals, Fourth Circuit.

Dec. 23, 1946.

270

Theodore B. Benson, of Washington, D. C., for petitioner.

L. W. Post, Sp. Asst. to Atty. Gen. (Douglas W. McGregor, Asst. Atty. Gen., and Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on brief), for respondent.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The P. Dougherty Company, the taxpayer in this case, seeks a review of a decision and order of the Tax Court of the United States whereby deficiencies in income and excess profits taxes for the fiscal year ended February 28, 1943, were determined and a penalty of 25 per cent for failure to file a return of excess profits for that year was imposed. The deficiencies resulted from the rejection of certain allowances for depreciation and certain deductions for business expenses claimed by the taxpayer. The failure to file the return is admitted, and the question is whether the failure was due to a reasonable cause and not to willful neglect.

The facts found by the Tax Court are substantially as follows: The taxpayer is a Maryland corporation engaged in the towing and barge transportation business. It keeps its books and files its income tax returns on the basis of a fiscal year ending February 28. Between 1915 and 1923 it acquired at the aggregate cost of $1,141,-620.26 two steel tugs and fourteen wooden barges to which the depreciation questions raised in this proceeding relate. Between 1922 and 1942 some of the vessels were not in actual use for long periods of time in part or all of these years; but all of the vessels were kept painted and in a seaworthy condition.

During the years 1940 and 1941 the taxpayer spent various sums aggregating $169,783.23 in altering and reconditioning the tugs and seven of the barges; and it is stipulated that these sums should be capitalized and depreciated at the rate of 10 per cent per annum.

In 1942 the taxpayer spent $17,593.32 to replace the stern of the barge Maryland which had rotted, and treated this expenditure in its return as an ordinary expense deductible from income. But the Commissioner held that it was a capital expense not deductible in its entirety in the taxable year.

In 1922 the taxpayer adopted and has since used the straight-line method of depreciation, and has computed the depreciation on the vessels at the rate of 5 per cent per year. For a number of years prior to 1942 it reported net losses in the operation of its business in excess of the deductions for depreciation and the deductions were not disallowed. At the end of the taxable year 1941 the original cost of seven barges (including the barge Maryland) acquired between 1915 and 1918 had been fully written off by deductions, and there remained only $3,000 of the original cost of each of the remaining barges and $5,477.25 of the original cost of each of the tugs.

The Commissioner held that the vessels, whether or not in use, were subject to depreciation at 5 per cent per annum. For the years 1941, 1942 and 1943 he included in the cost basis of the vessels the remaining original cost of the tugs and barges plus the costs of reconditioning which he treated as capital expenditures.

The taxpayer filed its income return and declared value excess profits tax return for the year ending February 28, 1943 showing a net loss. It did not file an excess profits return for the reason that its return showed that its operations for the year had resulted in a loss. The Commissioner assessed a 25 per cent penalty for the failure to file the return. The determinations of the Commissioner were upheld by the court in all respects. Five members of the court dissented from the decision in regard to the imposition of the penalty.

We consider first whether the taxpayer was justified in restoring to capital in the year 1942 amounts previously charged off and allowed as depreciation deductions in order to increase its adjusted basis for depreciation. Section 23 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, § 23, lists the allowable deductions from gross income and includes depreciation in the following terms:

"§ 23(*l*) Depreciation. A reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

"(1) of property used in the trade or business, or

"(2) of property held for the production of income."

Under § 23(n) and § 114 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code, §§ 23(n), 114, the basis upon which depreciation of any property is to be allowed is that adopted for the purpose of determining the gain or loss upon the sale of such property as set out in § 113(b) which provides that the basis shall be the cost of the property adjusted in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolesence, amortization and depletion, to the extent allowed (but not less than the amount allowable) under the statutes. The same matter is outlined in Treasury Regulations 103, § 19.23(1)-2 and Treasury Regulations 111, § 29.23(1)-2.

█ It will be seen from the foregoing that depreciation is allowable only on property used in trade or business or property held for the production of income. With this provision in mind the taxpayer contends that since its tugs and some of its barges lay idle for protracted periods between 1922 and 1942, they were not then used in trade or business and were therefore not subject to allowable depreciation. In one sense the contention is not without factual foundation, for the vessels were not actually used during these periods; but they were nevertheless kept in usable condition and were ready for use should the occasion arise. In other words, they were devoted to the trade or business which we think was sufficient to bring them within the statutory phrase. It was so held in Kittredge v. Commissioner, 2 Cir., 88 F.2d 632, 634, and Yellow Cab Co. of Pittsburgh v. Driscoll, D.C., W.D.Pa., 24 F.Supp. 993, 994.* In the Kittredge case the court said, 88 F.2d at page 634:

"* * * To read the phrase 'used in the trade or business' as meaning only active employment of property devoted to the business would lead to results which we cannot believe Congress intended. For example, one factory of a large industrial plant may lie idle for a year, and in fact suffer depreciation as great, or greater, than that sustained by the factories in operation. To allow no depreciation for the idle factory would be most unfair to the taxpayer, for he must claim the deduction in his tax return for the year when the depreciation occurs, and may not take it in a later year. See Hardwick Realty Co. v. Commissioner, 2 Cir., 29 F.2d 498, 500. Hence we think the phrase should be read as equivalent to 'devoted to the trade or business'; that is to say, that property once used in the business remains in such use until it is shown to have been withdrawn from business purposes."

It is immaterial that the taxpayer sustained net losses irrespective of the depreciation taken during these early years, and on that account derived no tax benefit from the allowance. See Helvering v. Virginian Hotel Corp., 4 Cir., 132 F.2d 909, affirmed 319 U.S. 523, 63 S.Ct. 1260, 87 L.Ed. 1561, 152 A.L.R. 871.

In respect to the sum of $17,593.32 spent upon the barge Maryland in the tax year ending February 28, 1943, the Tax Court set out its findings of fact and conclusions of law in the following terms:

"During the taxable year the petitioner owned the barge Maryland which had been

*The taxpayer relies on expressions in the decisions in the following cases: Gambrinus Brewery Co. v. Anderson, 282 U.S. 638, 51 S.Ct. 260, 75 L.Ed. 588; Buckwalter v. Commissioner, 6 Cir., 61 F.2d 571; Detroit Edison Co. v. Commissioner, 319 U.S. 98, 63 S.Ct. 902, 87 L.Ed. 1286; United States v. Real Estate-Land Title & Trust Co., 3 Cir., 102 F.2d 582, affirmed, 309 U.S. 13, 60 S.Ct. 371, 84 L.Ed. 542; Becker v. Anheuser-Busch, Inc., 8 Cir., 120 F.2d 403, certiorari denied 314 U.S. 625, 62 S.Ct. 105, 86 L.Ed. 105; Taylor v. Commissioner, 3 Cir., 51 F.2d 915, certiorari denied 284 U.S. 689, 52 S.Ct. 265, 76 L.Ed. 581; Robinson v. Commissioner, 3 Cir., 134 F.2d 168; Helvering v. Owens, 305 U.S. 468, 59 S.Ct. 260, 83 L.Ed. 292. We have examined these cases and find nothing at variance with the conclusion we have reached.

acquired by it in 1917. The cost of this barge had been recovered through depreciation deductions prior to the taxable year. During the taxable year the petitioner spent $15,523.30 in enlarging the hatches and in making other improvements. The parties have stipulated that the cost of these improvements was a capital outlay to be recoverable through deductions for depreciation during the estimated useful life of the barge. During the taxable year the petitioner also spent $17,593.32 in rebuilding the stern of the barge. It was discovered that the woodwork of the stern had rotted away. These rotted timbers and planks had to be torn out and replaced. Although the amount spent is claimed as a cost of repairs, the petitioner's president testified that they amounted to a 'replacement' of the stern. Section 24 of the Internal Revenue Code provides in part as follows:

"Section 24. Items not Deductible.

"(a) General Rule.—In computing net income no deduction shall in any case be allowed in respect of—

\* \* \* \* \* \*

"(2) Any amount paid out for new buildings or for permanent improvement or betterments made to increase the value of any property or estate;

"(3) Any amount expended in restoring property or in making good the exhaustion thereof for which an allowance is or has been made.

"The petitioner contends that this expenditure of $17,593.32 falls in a different category from the expenditure made for enlarging the hatches. We are of the opinion that it does not. The work done was more in the nature of a permanent betterment or restoration than a recurrent repair or upkeep. The benefits to petitioner were to last over a period of several years, perhaps for the remaining life of the barge. It was more like putting on a new roof, Georgia Car & Locomotive Co., 2 B.T.A. 986, or restoring a building, Joseph E. Hubinger, 13 B.T.A. 960, affirmed 2 Cir., 36 F.2d 724.

"We sustain the respondent's contention in treating the expenditure of $17,593.32 the same as he treated the expenditure of $15,523.30, i. e., as a capital expenditure."

We find no reason to depart from this conclusion. It is supported by Treasury Regulations 111, § 29.23(a)-4, which provides that the cost of repairs which neither materially add to the value of the property nor appreciably prolong its life but keep it in an ordinary efficient operating condition, may be deducted as expense, provided the plant or property account is not increased by the amount of such expenditures.

The taxpayer is claiming this deduction from net income as an ordinary and necessary expense in carrying on its business under § 23 of the Internal Revenue Code and has the burden of showing that its case falls within the scope of the statute. New Colonial Ice Co., Inc., v. Helvering, 292 U.S. 435, 440, 54 S.Ct. 788, 78 L.Ed. 1348. The Tax Court has found, not without reason, that the proof does not measure up to this requirement because the replacement of the entire stern of the vessel can hardly be deemed an incidental repair. Where the line should be drawn between capital and current expenses often presents a practicable question of considerable difficulty, and the decision of the Tax Court in such a case should not be disturbed unless manifestly wrong. Dobson v. Commissioner, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 848; John Kelley Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299. Furthermore, the circumstances of the case bring the claim for deduction within a specific prohibition of the statute as the Board has pointed out. We find no error in the holding that the repairs were in the nature of a restoration for which an allowance through depreciation had been made. See Hubinger v. Commissioner, 2 Cir., 36 F.2d 724, certiorari denied sub nom. New Haven Bank v. Commissioner, 281 U.S. 741, 50 S.Ct. 347, 74 L.Ed. 1155; Black Hardware Co. v. Commissioner, 5 Cir., 39 F.2d 460, certiorari denied 282 U.S. 841, 51 S.Ct. 22, 75 L.Ed. 747; Buffalo Union Furnace Co. v. Commissioner, 2 Cir., 72 F.2d 399; cf. Zimmern v. Commissioner, 5 Cir., 28 F.2d

769. See Parkersburg Iron & Steel Co. v. Burnet, 4 Cir., 48 F.2d 163; Fidelity Storage Corp. v. Burnet, 61 App.D.C. 121, 58 F.2d 526; Southern Ry. v. Commissioner, 4 Cir., 74 F.2d 887.

The assessment of the penalty of 25 per cent for the failure of the taxpayer to file the requisite excess profits tax return presents a question of some difficulty. Section 291 of the Internal Revenue Code, 26 U.S.C.A. Int.Rev.Code. § 291, provides for the imposition of the penalty for such failure as took place in this case "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." The Tax Court found that there was no evidence that the taxpayer was willfully negligent in failing to file the return but also found that there was no proof that the good faith of the taxpayer or its belief that it had no excess profits tax net income was based upon reasonable grounds.

It is obvious that one who searches for the motives underlying human conduct in a particular field is on uncertain ground when he tries to determine where willful neglect ends and reasonable cause begins. The difficulty is attested by divisions in the Tax Court itself—as witness the impressive dissents on the point in question in the opinion in the pending case, 5 T.C. 791, and in Economy Savings & Loan Co. v. Commissioner, 5 T.C. 543, promulgated August 1, 1945. The dissenters rest their case upon the difficulties and complexities inherent in the tax laws, upon the liability of the taxpayer, who has made a mistake, to an assessment of a deficiency tax and interest for the delay, and upon a well founded reluctance to impose an additional penalty in the absence of bad faith or willful delinquency. They point out that in Spies v. United States, 317 U.S. 492, 496, 63 S.Ct. 364, 87 L.Ed. 418, it is stated that it is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care.

■■ On the other hand the question is one of fact and peculiarly within the province of the Tax Court; Commissioner v. Lane-Wells Co., 321 U.S. 219, 225, 64 S.Ct. 511, 88 L.Ed. 684; Paymer v. Commissioner, 2 Cir., 150 F.2d 334, 337; and in a number of decisions of the Tax Court, affirmed by the Courts of Appeals, it has been held that an innocent mistake by a taxpayer which leads him to believe that he is not required to file a return is of itself insufficient to show that his failure was due to reasonable cause within the meaning of the statute. West Side Tennis Club v. Commissioner, 39 B.T.A. 149, 160, affirmed 2 Cir., 111 F.2d 6, 9, 130 A.L.R. 103, certiorari denied 311 U.S. 674, 61 S.Ct. 40, 85 L.Ed. 434; Fides, A. G., v. Commissioner, 47 B.T.A. 280, 285, affirmed 4 Cir., 137 F.2d 731, 735, certiorari denied 320 U.S. 797, 64 S.Ct. 266, 88 L.Ed. 481; Burford Oil Co. v. Commissioner, 4 T.C. 613, 618, affirmed 5 Cir., 153 F.2d 745, 747; Southeastern Finance Co. v. Commissioner, 4 T.C. 1069, 1087, affirmed 5 Cir., 153 F.2d 205, 206.

The decision of the Tax Court in this respect in the pending case must therefore be upheld.

Affirmed.