CHARLES D. GALLAGHER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Gallagher v. Commissioner
Docket No. 6442-78.
United States Tax Court
T.C. Memo 1979-412; 1979 Tax Ct. Memo LEXIS 117; 39 T.C.M. (CCH) 291; T.C.M. (RIA) 79412; September 27, 1979, Filed Charles D. Gallagher, pro se. Edward F. Peduzzi, Jr., for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $1,829 in petitioner's Federal income tax for 1974. The issues for decision are as follows: 1. Whether petitioner is entitled to deduct the travel and away-from-home expenses he claimed in connection with his employment; 2. Whether petitioner is entitled to deduct $137 as the *118 cost of protective clothing used in his work; and 3. Whether petitioner is entitled to a deduction for depreciation in excess of the amounts allowed on a trailer used to haul his tools. FINDINGS OF FACT When he filed his petition, petitioner Charles D. Gallagher (hereinafter petitioner) was a legal resident of Brisbin, Pennsylvania. He filed a timely Federal income tax return for 1974. Issue 1. Travel and "Away-From-Home" Expenses
In the mid-1950's, petitioner was in business with his father and brother. Subsequently, petitioner's father and brother purchased a house and the surrounding 2 square acres in Brisbin, Pennsylvania, and transferred constructive ownership of the property to petitioner in order to buy out petitioner's interest in the business. They recorded the title to the house and land in petitioner's brother's and sister's-in-law names. Upon depletion of the coal deposits located on the property, title was to be transferred to petitioner. As of 1974, title remained in the brother's name, the sister-in-law previously having died. Except for a short period of time in 1969 or 1970 when friends of petitioner were living there rent-free, petitioner *119 was the sole inhabitant of the house. Petitioner received his mail there, had his automobile registered at the address, paid electricity for the house, and paid real estate taxes to his brother who in turn paid them to the tax authorities. Petitioner, the sole inhabitant of the house, was not in continuous residence because of his work. For a number of years, petitioner was a member of the International Brotherhood of Electrical Workers (I.B.E.W.), Local 1377, Cleveland, Ohio. Petitioner never worked in the Brisbin area as an electrician. During 1971 through 1974, petitioner was referred by Local 1377 to various locals (foreign locals) primarily located in southeastern Pennsylvania, because Local 1377 could not provide work referrals in that area. Petitioner lacked job security when working out of these foreign locals because when a member of the local became available for work, that member would replace a worker, such as petitioner from another local. While he was working out of the foreign locals, petitioner rented accommodations near the jobsite and returned occasionally to his house in Brisbin on weekends. Petitioner also occasionally lived in the house during extended *120 periods of unemployment. Following is a table listing petitioner's jobsites, reasons for leaving the employment, residence while working on the job, and daily commuting distance to the jobsite: Dates
Employment Site
Termination Cause
7/1/70 (approx.) to
6/15/71 (approx.)
N.Y., N.Y.
Undetermined
6/15/71 (approx.) to
1/2/72
Unemployed
1/3/72 to 6/8/72
Delta, Pa.
Fired
6/8/72 to 7/13/72
Unemployed
7/14/72 to 7/28/72
Harrisburg, Pa.
Job finished
8/1/72 to 9/22/72
Corning, N.Y.
Undetermined
9/23/72 to 11/28/72
York, Pa.
Fired
11/30/72 to 1/16/73
Chichester, Pa.
Job finished
1/17/73 to 2/26/73
Unemployed
2/27/73 to 4/11/73
Salem, N.J.
Fired
4/17/73 to 5/16/73
Bridgeton, N.J.
Replaced by locals
5/17/73 to 5/29/73
Unemployed
5/30/73 to 12/7/73
Philadelphia, Pa.
Replaced by locals
12/10/73 to 2/22/74
Chester, Pa.
Replaced by locals
2/25/74 to 6/17/74
Media, Pa.
Fired
6/18/74 to 6/23/74
Unemployed
6/24/74 to 7/19/74
Downington, Pa.
Replaced by locals
7/22/74 to 7/24/74
Media, Pa.
Fired
7/29/74 to 8/7/74
Philadelphia, Pa.
Relaced by locals
8/12/74 to 10/29/74
Chester, Pa.
Replaced by locals
10/30/74 to 12/13/74
Unemployed
*121 Mileage from
Residence
Dates
Residence
to Employment
7/1/70 (approx.) to
6/15/71 (approx.)
N.Y., N.Y.
None
6/15/71 (approx.) to
1/2/72
Brisbin, Pa.
1/3/72 to 6/8/72
Delta, Pa. and Work, Pa.
None and 40 miles
6/8/72 to 7/13/72
York, Pa. and Brisbin, Pa.
7/14/72 to 7/28/72
York, Pa.
20 miles
8/1/72 to 9/22/72
York, Pa. and Corning, N.Y.
None
9/23/72 to 11/28/72
York, Pa.
None
11/30/72 to 1/16/73
York, Pa.
81 miles
1/17/73 to 2/26/73
York, Pa.
2/27/73 to 4/11/73
York, Pa. and Gap, Pa.
77 miles
4/17/73 to 5/16/73
Gap, Pa.
77 miles
5/17/73 to 5/29/73
Gap, Pa.
5/30/73 to 12/7/73
Gap. Pa.
42 miles
12/10/73 to 2/22/74
Gap, Pa.
39 miles
2/25/74 to 6/17/74
Gap, Pa.
45 miles
6/18/74 to 6/23/74
Gap, Pa.
6/24/74 to 7/19/74
Gap, Pa.
18 miles
7/22/74 to 7/24/74
Gap, Pa.
45 miles
7/29/74 to 8/7/74
Gap, Pa.
44 miles
8/12/74 to 10/29/74
Gap, Pa.
45 miles
10/30/74 to 12/13/74
Brisbin, Pa.
Gap, Pennsylvania, is approximately 35 miles from Local 654, I.B.E.W., Chester, Pennsylvania, and is approximately 183 miles from Brisbin, Pennsylvania. Petitioner was referred to every job on which he worked during the period *122 May 30, 1973 through October 29, 1974, by Local 654.During 1974, petitioner traveled 15,855 miles between Gap and the various jobsites, 662 miles between Gap and Brisbin, and 88 miles between Gap and the union hall at Local 654. Petitioer traveled to the union hall in order to get a job assignment. Petitioner recorded the mileage in a daily log book. Petitioner incurred lodging and utility expenses during 1974 to $2,000 and $393, respectively. Petitioner also incurred expenses, for meals, tips, and laundry during that year. Petitioner substantiated only the lodging and utility expenses. On his Federal income tax return for 1974, petitioner claimed the following deductions: Item
Amount
Business mileage
$2,411
Lodging (268 days at $7.50)
2,000 [sic]
Meals (268 days at $6)
1,608
Tips and laundry (43 weeks)
140
Utilities
393
Respondent determined in his notice of deficiency that petitioner is not entitled to those deductions because they did not represent ordinary and necessary business expenses. Issue 2. Protective Clothing
Although petitioner was classified on most jobs as a "journeyman electrician," on occasion he was also classified *123 as a "certified welder." During 1974, petitioner purchased insulated boots and overalls, a welding jacket, and welding gauntlets which he used only when he worked as a welder. He did not save the purchase receipts. On his 1974 return, petitioner deducted $137 for the unreimbursed cost of the protective clothing. Respondent determined petitioner was not entitled to the deduction explaining that the expenditure did not represent ordinary and necessary business expenses. Issue 3. Utility Trailer Depreciation
Prior to June 1974, petitioner carried the protective clothing and his tools to the jobsites in his automobile. On June 2, 1974, petitioner purchased a horse trailer for $1,325 and used it through October 29, 1974, to transport the clothing and tools. On his 1974 return, petitioner claimed a $320 depreciation deduction for the trailer. Respondent determined that petitioner is not entitled to the deduction because petitioner did not establish that the property was used in a trade or business or in the production of income. OPINION Issue 1. Travel and "Away-From-Home" Expenses
During 1974, petitioner maintained a home in Brisbin, Pennsylvania, and lived *124 in a rented home in Gap, Pennsylvania, while he worked at various jobsites in the vicinity of Gap. Petitioner commuted 15,855 miles from Gap to the jobsites and another 88 miles from Gap to the union hall in Chester, Pennsylvania. Petitioner also traveled 662 miles in returning to Brisbin on weekends and when unemployed. Section 162(a) [1]/ allows as a deduction all ordinary and necessary business expenses incurred during the taxable year. Such expenses include "traveling expenses (including amounts expended for meals and lodging * * *) while away from home in the pursuit of a trade or business." Sec. 162(a)(2). For section 162(a)(2) purposes, the taxpayer's "home" does not mean his domicile or permanent residence. Rather, his "home" is generally his abode in the vicinity of his principal place of employment. Blatnick v. Commissioner,56 T.C. 1344, 1348 (1971); Kroll v. Commissioner,49 T.C. 557, 561 (1968). Nevertheless, it is well settled that a taxpayer may deduct the cost of his noncommuting transportation, meals, lodging, and other living expenses when his principal place of business is "temporary" as distinguished from "indefinite. *125 " Peurifoy v. Commissioner,358 U.S. 59, 60 (1958); Kroll v. Commissioner,supra at 562. Petitioner argues that his principal place of employment during 1974 remained in Brisbin because he remained a member of Local 1377 out of Cleveland, Ohio. Therefore, he contends that his employment at the various jobsites in the vicinity of Gap was temporary. Consequently, he argues that he is entitled to the travel and "away from home" expense deductions. We do not think the facts support petitioner's argument. First, Brisbin does *126 not qualify as petitioner's principal place of employment because he has never been employed there. Moreover, even assuming, arguendo, that Brisbin did qualify at one time, by 1974 Gap had become petitioner's principal place of employment. The location of employment, which is temporary at its inception but becomes substantial or indefinite in duration, is considered to be the taxpayer's home. Kroll v. Commissioner,supra at 662. Here, arguably, each of petitioner's jobs since 1971 was temporary in nature due to the union priority rules which gave preference to other workers if they became available. Nevertheless, by 1974 his length of employment at various jobsites in the Gap area had become substantial. Moreover, petitioner's pattern of employment demonstrates that his continued employment in the area was "indefinite" rather than "temporary." Because we have found that Gap was petitioner's tax home in 1974, his living expenses incurred in Gap and the mileage expenses relating to his trips between Gap and Brisbin are nondeductible. Moreover, the mileage expenses relating to the 15,855 miles driven between Gap and the jobsites and the 88 miles driven between Gap and *127 the Chester local union hall are nondeductible commuting expenses. Sec. 1.162-2(e), Income Tax Regs.[2]/ Issue 2. Protective Clothing
During 1974, petitioner purchased insulated boots and overalls, a welding jacket, and welding gauntlets for use when he worked as a welder. On his 1974 income tax return, petitioner deducted $137 as unreimbursed costs of the protective clothing. The deduction was an estimate of his expenses. Petitioner *128 did not save the purchase receipts. As a general rule, the cost of clothing is a nondeductible personal expenditure within the meaning of section 262. Kennedy v. Commissioner,451 F.2d 1023 (3d Cir. 1971), affg. a Memorandum Opinion of this Court, cert. denied 406 U.S. 920 (1972). However, the cost is deductible under section 162(a) where (1) the clothing is required or essential in the taxpayer's employment, (2) the clothing is not suitable for general or personal wear, and (3) the clothing is not so worn. Yeomans v. Commissioner,30 T.C. 757, 767 (1958). Respondent contends that petitioner made no representations as to whether the items he purchased were or were not required for employment, nor whether they were convertible to general use, and therefore the deduction should be disallowed. We disagree. We recognize that petitioner did not testify specifically on the points referred to by respondent. Nevertheless, because petitioner at times worked as a "certified welder," the items purchased were essential to protect him in his employment.Petitioner's testimony indicates that he did not use the clothes outside of his employment. *129 Also, these clothes are unsuitable for general or personal wear because of their unusual nature. Thus, we conclude that the cost of the items purchasedc are deductible under section 162(a). Issue 3. Utility Trailer Depreciation
On June 2, 1974, petitioner purchased for $1,325 a horse trailer which he used until October 29, 1974, to carry his tools and protective clothing.Prior to the purchase, petitioner carried those items in his automobile. On his 1974 return, petitioner deducted $320 as depreciation on the trailer. Respondent has conceded, citing Rev. Rul. 75-380, 1975-2 C.B. 59, 60, and Rev. Rul. 63-100, 1963-1 C.B. 34, that petitioner is entitled to a depreciation deduction, but only in the amount of $180.41. We think respondent's concession is correct, but we disagree with his calculations. The computation of the depreciation deduction (based on a useful life of 3 years) claimed by petitioner and the amount allowable under respondent's concession is as follows: Petitioner $'Respondent
Purchase price
$1,325.00
$1,325.00
Less salvage value
25.00
25.00
Depreciable basis
$1,300.00
$1,300.00
Annual depreciation
433.00
433.00
Factor for 1974
.74
.4167
Depreciation for 1974 $ 320.42 $ 180.43
*130 Petitioner did not explain why he used a factor of 74 percent and we are unable to divine why he did so. Respondent used as a factor a percentage equivalent to that part of the year from the date of purchase through the date on which petitioner last worked during 1974. Respondent has conceded a depreciation deduction only for that part of the year during which petitioner was employed and actually used the trailer. Generally, however, the deduction is allowable even though the asset is idle or its use is temporarily suspended due to business conditions. P. Dougherty Co. v. Commissioner,159 F.2d 269 (4th Cir. 1946), cert. denied 331 U.S. 838 (1946); Steen v. Commissioner,61 T.C. 298, 303 (1973), affd. per curiam 508 F.2d 268 (5th Cir. 1975). Here, petitioner's use of the trailer was suspended because of petitioner's unemployment and not because he no longer held the asset for his trade or business. Thus, petitioner is entitled to a depreciation deduction for the part of the year during which he owned the trailer. This span covers 7 months, which results in a factor of 7/12 or.583. Accordingly, petitioner's allowable *131 depreciation for 1974 is.583 X $433 or $252.44. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. / All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted. Sec. 162(a)(2) provides as follows: SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * *↩
2. / The facts in the instant case are distinguishable from the facts covered by Rev. Rul. 190, 1953-2 C.B. 303, revoked byRev. Rul. 76-453, 1976-2 C.B. 86. Rev. Rul. 190↩ allows a deduction to construction workers temporarily employed at a distant jobsite for the expense of commuting between their principal place of business and the jobsite. Here, however, petitioner did not commute to temporary employment distant from his principal place of employment. To the contrary, the various jobsites around Gap constituted his principal place of employment in 1974. Moreover, his employment there was indefinite rather than temporary. Hence, the revenue ruling is inapposite to the facts of this case.