RICHARD A. AND PEGGY F. LEONARD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Leonard v. Commissioner
Docket No. 7647-91
United States Tax Court
T.C. Memo 1993-472; 1993 Tax Ct. Memo LEXIS 484; 66 T.C.M. (CCH) 1019; October 13, 1993, Filed *484 Decision will be entered under Rule 155. Richard A. Leonard, pro se. For respondent: Amy Dyar Seals. PARR
PARR
MEMORANDUM FINDINGS OF FACT AND OPINION PARR, Judge: By statutory notice of deficiency dated February 5, 1991, respondent determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653
6653
6653(a)(2)
6661
(a)(1)(A) (a)(1)(B) 1985
$  8,824.12
$ 441.21
-  -
[1]
$ 1,261.28
1986
11,562.63
-  $ 578.13
[2]
-
-  1987
1,614.21
-  80.71
[1]
-
-  After concessions by petitioners no issues remain for 1987 and the following issues remain for decision for 1985 and 1986: (1) Whether petitioners were engaged in an activity "for profit" within the meaning of section 183[1] and are thus entitled to depreciation deductions for land-clearing equipment in 1985 and 1986. We hold that the activity was "for profit" and petitioners are entitled to depreciation deductions. (2) Whether petitioners are liable for additions *485 to tax pursuant to section 6653(a)(1) and (2) for 1985 and section 6653(a)(1)(A) and (B) for 1986. We hold that they are not in regard to the depreciation deductions issue, but that they are in regard to all conceded issues. (3) Whether petitioners are liable for the addition to the tax pursuant to section 6661 for 1985. We hold that they are not. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time the petition herein was filed, petitioners resided in Knoxville, Tennessee. Petitioners are married and filed joint Federal income tax returns for 1985 and 1986. Petitioners had homes in both Florida and North Carolina during the years at issue. References to petitioner in the singular are to Richard A. Leonard. *486 Petitioner is a high school graduate with some college classes in bookkeeping. He previously served in the United States Air Force operating large equipment to move airplanes and set up runways. Petitioner started Pilot House, Inc., in 1967 with $ 5,000 and built it into a company with sales in excess of $ 18 million per year in its best year. Pilot House, Inc., is in the business of selling and renting meeting room equipment. Petitioner developed raw land in Florida and North Carolina. On the Florida land, petitioner had a rental house built. In 1978, petitioner built a vacation home and two rental homes in North Carolina. In 1980, petitioner purchased four different North Carolina tracts, after watching the construction company clear the roads and prepare the lots. Petitioner sold one of the lots and built a home on another lot. In 1981, petitioner, along with Ted Kenney, a certified public accountant, established Mountain Acres Trust (Trust), of which petitioner was a cotrustee and beneficiary. In December 1981 the Trust purchased 112 acres of land in North Carolina. The purpose of the Trust was to divide the land into lots and to sell the lots to individuals. Kenney *487 was to sell the lots to interested Floridians. Petitioner was to grade the lots and establish roadbeds so that the lots were ready for building and accessible to prospective buyers. For that purpose, in 1982 petitioner and Alden Middleton, a bulldozer operator, purchased a bulldozer for $ 40,000. Petitioner and Middleton jointly signed a note to purchase the bulldozer. Petitioner wanted Middleton to have some sense of responsibility in their partnership. The bulldozer was used to begin clearing the Trust land. Petitioner was paid for the work by the Trust. In 1982, a dispute arose in regard to the right-of-way to the Trust land. Because of the dispute, petitioner was unable to continue using the bulldozer to clear the land. Petitioner did not want to sell the bulldozer because he saw the right-of-way dispute as a temporary problem. On the other hand, he did not want the $ 40,000 piece of equipment to sit idle. As a solution, petitioner and his partner Middleton decided to operate a land-clearing business. Petitioner individually purchased a trailer for $ 4,400 to haul the bulldozer, a pickup truck for $ 1,500, a tractor for $ 3,500 to pull the trailer, and a dump truck *488 for $ 12,500. In 1983 petitioner purchased a backhoe for $ 9,000. The backhoe was too large for the areas where the partners were working in Sylva, North Carolina. The right-of-way problem was resolved at the end of 1983, and the Trust was successful in selling one 1.5-acre lot at that time for $ 6,000. [2] Petitioner and Middleton cleared the lot and prepared a roadway to it with the heavy equipment. Petitioner was paid by the Trust for that work. In 1984, petitioner became aware that Kenney, the cotrustee of the Trust, had embezzled funds from Floridians who invested in Kenney's share of the Trust. Petitioner knew a lawsuit could ensue and that the Trust land would again be inaccessible to him in his land-clearing operations, again frustrating his first intentions in the use of the heavy equipment. The lawsuit was filed *489 in 1985 and not settled until 1989. In 1984, petitioner also became increasingly discouraged by Middleton's operation of the land-clearing business, which had continually sustained losses since its inception in 1982. Petitioner felt Middleton had put much less effort into the operation than necessary. For that reason, petitioner dissolved the partnership. Petitioner assumed the partnership note, thus becoming solely responsible for the debt and the sole owner of the bulldozer. To limit liability on the equipment, petitioner formed a Tennessee corporation, R.A.A.L., Inc. (hereinafter the Corporation), in January 1985. In 1985, petitioner continued to operate the land-clearing business as a sole proprietorship until March 1985. In March, petitioner converted the use of the heavy equipment from equipment used by the sole proprietorship to rental equipment owned by petitioner and rented to the Corporation. Petitioner intended for the Corporation to continue the land-clearing business he had been operating as a sole proprietor. Petitioner had been using another, more experienced heavy equipment operator, R. A. Luker, in his sole proprietorship. The Corporation then hired Luker. *490 Luker contracted for the Corporation to install water lines in South Carolina. That job was begun in March 1985 and was completed in June of 1985. All the money earned on the job was spent on wages and expenses. Therefore, no money was available to pay petitioner rent for the heavy equipment. Petitioner was very discouraged at that point and decided to let the Corporation become dormant. Petitioner intended that the equipment be available for rent, but did not want to be involved in any further custom land-clearing jobs. In 1985 petitioner was convinced that the court was going to order the Trust land to be sold. With this, and the fact petitioner was unable to effectively make the land-clearing business profitable, petitioner decided to sell the heavy equipment. By September of 1987 petitioner was successful in selling all of the equipment. OPINION Respondent asserts that the Court should disregard petitioner's pre-1985 experience with the heavy equipment, other than to recognize the fact that petitioner had experienced losses over the first 3 years of operation of the equipment. If the Court follows this view, respondent asserts that the Court should find that petitioner *491 was not engaged in a business with an objective of making a profit, and is thus not entitled to depreciation deductions. Petitioner argues that the Court should look at his entire experience with the equipment in evaluating whether he had a profit objective. If his whole experience with the equipment is evaluated, petitioner contends that the Court will find that he did have a profit objective and is thus entitled to depreciation deductions on the equipment. The determination whether an activity is engaged in for profit is to be made by reference to objective standards, taking into account all of the facts and circumstances of each case. Sec. 1.183-2(a), Income Tax Regs. We agree with petitioner that, in order to properly evaluate petitioner's objectives, we must look at his entire course of dealing with the equipment. Whether Petitioner Engaged in a Business for Profit
Initially, we will dispose of collateral issues that respondent raises in regard to the question of whether petitioner entered the land-clearing/equipment rental venture with a profit objective. In concluding there was no profit objective, respondent relied on several factors: (1) Petitioner formed *492 a regular corporation rather than a subchapter S corporation; (2) the Corporation did not take a rent deduction for use of the equipment, and petitioner failed to claim income from rent received on the equipment; and (3) because the rent deduction was not taken or rental income recognized, the equipment must not have been used. First, because petitioner did not form a subchapter S corporation, respondent contends that petitioner could not properly claim the flowthrough of the Corporation's losses to his own individual tax return. Petitioner operated the land-clearing business as a sole proprietorship until March 1985 and thus was entitled to claim expenses regarding that business on his individual income tax return. The deductions claimed on petitioner's individual income tax return are those of petitioner and not of the Corporation, and there was no showing of duplication of expenses. We find the lack of subchapter S status to be irrelevant to this case. Second, the Corporation did not take a deduction for rents, and petitioner did not claim income for rents because none were paid or received. The Corporation's financial statements for the period ended June 30, 1985, show an *493 accrual for rental expense of $ 12,000 and a corresponding accrual to the liability account, "Loans from Stockholders". No deduction for rental payments was made on the Corporation's 1985 Federal income tax return. Section 267(a)(2) precludes the Corporation from deducting the accrued rental expense. This section requires a corporation with an individual stockholder with greater than 50-percent ownership of the corporation to deduct an expense only when the item will be taxable income to the shareholder. [3]Since petitioner is a cash basis taxpayer, the income from rents would be taxable to him only upon receipt. Sec. 1.446-1(c)(1)(i), Income Tax Regs. Because the Corporation had no cash, it was unable to pay rent to petitioner, and thus, the Corporation could not deduct the rent expense. Sec. 267(a)(2). *494 Third, respondent claims that since the Corporation did not deduct rental expenses and since petitioner did not collect rental income, the land-clearing equipment was not used. However, the equipment was physically used for a job in South Carolina, from which the Corporation received compensation. Therefore, respondent's conclusion is erroneous. Next, in determining whether petitioner had the requisite profit objective, we must address the application of section 183. Section 183(c) disallows certain deductions for activities not engaged in for profit. The test for deciding whether an activity is conducted for profit is whether the taxpayer entered into the activity with an actual and honest profit objective. Surloff v. Commissioner, 81 T.C. 210, 233 (1983); Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). The taxpayer's expectation need not be reasonable, but there must be a good faith profit objective. Dreicer v. Commissioner, supra; sec. 1.183-2(a), Income Tax Regs. The burden of proof is on the *495 taxpayer. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). We give greater weight to objective facts than to a taxpayer's mere statement of intent. Cherin v. Commissioner, 89 T.C. 986, 992 (1987). In determining whether an activity is engaged in for profit, section 1.183-2(b), Income Tax Regs., provides a nonexclusive list of nine factors. These factors are: (1) The manner in which the taxpayer carried on the activity; (2) the expertise of the taxpayer or his advisors; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to that activity; (7) the amount of occasional profit, if any, that is earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Sec. 1.183-2(b), Income Tax Regs. No single factor controls. Abramson v. Commissioner, 86 T.C. 360, 371 (1986); *496 Golanty v. Commissioner, supra.
1. Manner in Which Taxpayer Carried On the Activity. Maintenance of complete and accurate records may indicate a profit objective. Elliott v. Commissioner, 90 T.C. 960, 971-972 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). A change in operating method or abandonment of unprofitable methods may also indicate a profit objective. Ronnen v. Commissioner, 90 T.C. 74, 93 (1988); Pirnia v. Commissioner, T.C. Memo. 1989-627; sec. 1.183-2(b)(1), Income Tax Regs.
Petitioner asserted that he kept complete and accurate records, but that many of those records were lost in a number of recent moves. Nevertheless, because of petitioner's credible, consistent, and uncontroverted testimony and the contemporaneous documents presented into evidence, the lack of complete extant records does not weigh heavily against petitioner. We find it more significant that petitioner did change his operating methods, twice, in an unsuccessful effort to find a profitable operating method. First, when *497 petitioner discovered there was a right-of-way dispute, he expanded the business in an to attempt to make productive use of the $ 40,000 bulldozer. Second, when he found that his partner was not putting a good faith effort into the enterprise, he searched for another business associate. This factor weighs for petitioner. 2. Expertise of Taxpayer or Advisors. Preparation for an activity by extensive study of its practices or by consultation with experts may indicate that a taxpayer has a profit objective where the taxpayer follows such advice. Sec. 1.183-2(b)(2), Income Tax Regs.
The only advice petitioner sought was from the "fellows" at the pancake bar, but those "fellows" included at least two contractors. Petitioner's method may not have been the most business like, but we view it in light of his experience with his previous developments of raw land. Petitioner had orchestrated the development of other raw land in both Florida and North Carolina. Even though petitioner contracted the work out to general contractors, he still had the opportunity to observe those developments and gather information regarding their business needs. See Engdahl v. Commissioner, 72 T.C. 659, 668 (1979) *498 (although no formal market study was conducted, petitioners' informal and continuous consultations with their trainer, other breeders, and veterinarians were deemed adequate to demonstrate a profit objective). Based on the facts of this case, we conclude that petitioner made an adequate investigation. While petitioner did not conduct a formal study, he did consult informally with successful local contractors. The factor of the expertise of the taxpayer or his advisors weighs in petitioner's favor. 3. Time and Effort Expended by Taxpayer The fact that a taxpayer devotes a substantial amount of time and effort to carrying on an activity may indicate a profit objective. Sec. 1.183-2(b)(3), Income Tax Regs. Petitioner claims to have spent 20-25 hours per week in this activity. He claims to have done a variety of tasks including repairs to equipment, running errands to obtain repair parts, and paperwork for financial and Government reporting. However, since petitioner failed to substantiate this claim, we must weigh this factor against him. 4. Expectation of Asset Appreciation. A taxpayer may intend to derive an overall profit from an activity, even if the activity is *499 not currently profitable, if income from the activity and appreciation of the assets used in the activity exceed expenses of the activity. Sec. 1.183-2(b)(4), Income Tax Regs. Unrealized appreciation is relevant to deciding whether the taxpayer has a profit objective. Faulconer v. Commissioner, 748 F.2d 890, 899 (4th Cir. 1984), revg. T.C. Memo. 1983-165; Lemmen v. Commissioner, 77 T.C. 1326, 1341-1342, 1342 n.22 (1981). Since all the assets used in the land-clearing activities were depreciable machinery and equipment that deteriorated with time and technology, there was no expectation that the assets used in the activities might appreciate in value. This factor weighs in favor of respondent. 5. Taxpayer's Success in Carrying On Other Similar or Dissimilar Activities. The fact that a taxpayer has previously engaged in similar activities and converted them from unprofitable to profitable may indicate a profit objective, even though the activity is presently unprofitable. Sec. 1.183-2(b)(5), Income Tax Regs.
Losses continuing beyond the period customarily necessary to make the operation *500 profitable, if not explainable, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs. All the same, a profit objective may exist despite a history of losses unaccompanied by any gains. Bessenyey v. Commissioner, 45 T.C. 261, 273-274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Moreover, a series of losses at the beginning or startup stage of an activity does not mean that the activity is not engaged in for profit. Sec. 1.183-2(b)(6), Income Tax Regs.
Petitioner started his own business, Pilot House, with only a $ 5,000 investment in the 1960's. In its best year Pilot House generated $ 18 million in sales. Moreover, petitioner had successfully developed a number of pieces of raw land in Florida and North Carolina. Due to petitioner's success with other businesses, it was reasonable for him to think that he would be successful in this venture. In addition, this venture was relatively new. Petitioner operated the land-clearing business for only 5 years. Many businesses experience losses during their initial operating years. Accordingly, this factor weighs in petitioner's favor. *501 6. Taxpayer's History of Income or Loss in the Activity. A history of substantial losses may indicate that the activity was not conducted for profit. Golanty v. Commissioner, 72 T.C. 411, 427 (1979); sec. 1.183-2(b)(6), Income Tax Regs. However, a taxpayer may have a profit objective even when the activity has a history of losses without any profit. Bessenyey v. Commissioner, supra at 274. Losses sustained because of unforeseen or fortuitous circumstances beyond the control of the taxpayer do not indicate that the activity was not engaged in for profit. Faulconer v. Commissioner, supra at 900; sec. 1.183-2(b)(6), Income Tax Regs.
Petitioner has never experienced a profit in the land-clearing/equipment rental business. Petitioner has shown that unforeseen circumstances occurred. When petitioner first purchased the heavy equipment, his purpose was to clear lots and roads for land. However, two unanticipated disputes occurred over the land. The first dispute arose not long after the equipment was purchased in 1982 involving the right-of-way of petitioner and his partner *502 to the land they intended to develop with the heavy equipment. While that dispute was continuing, petitioner could not use the equipment to develop the land. The next dispute occurred 2 years later in 1984, resulting in a lawsuit in 1985 involving embezzlement by petitioner's Trust partner. Petitioner could not develop the land until the dispute was resolved in 1989, thus delaying the intended use of the heavy equipment. However, petitioner decided to sell the equipment in 1985 because of the inability to accomplish his original purpose of using the equipment to develop the land and his inability to find a profitable use for the equipment. Accordingly, we do not view his inability to make a profit from this activity as persuasive evidence that he lacked a profit objective. 7. Amount of Occasional Profit Earned. Small occasional profits with large continuous losses may not indicate a profit objective. Sec. 1.183-2(b)(7), Income Tax Regs. A taxpayer is presumed to engage in an activity for profit if the activity produces a profit in 2 out of 5 consecutive taxable years. Sec. 183(d). But if the presumption requirements are not met, no inference that the activity is not *503 engaged in for profit shall arise. Sec. 1.183-1(c)(1), Income Tax Regs.
In the case at hand, according to tax returns filed by petitioner, petitioner had losses in 1982-86. Therefore, in 5 out of 5 consecutive taxable years petitioner suffered losses caused by unanticipated events and unreliable people. This factor is neutral. 8. Financial Status of Taxpayer. Substantial income from sources other than the activity, especially if the losses generate substantial tax benefits, may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs.
Petitioner had substantial income from sources other than the land-clearing/equipment rental business. In 1985, petitioners had other items of income in excess of $ 90,000. This factor favors respondent. However, the concurrent existence of other income against which any deductions from the activity are usable merely poses the question, rather than answers it. In Engdahl v. Commissioner, 72 T.C. 659, 670 (1979), we stated: If there is no other income, there is no issue. As long as tax rates are less than 100 percent, there is no "benefit" in losing money. * * * The *504 essential question remains as to whether there was a genuine hope of economic profit. * * *
9. Personal Pleasure or Recreation. In the case at hand, there do not seem to be any elements of personal pleasure or recreation involved in the ownership and operation of the heavy equipment. This favors petitioner. Upon analyzing the factors in section 1.183-2(b), Income Tax Regs., we conclude that section 183 is inapplicable in the case at hand, because petitioner intended to realize a profit from his business venture. Accordingly, petitioner is entitled to depreciation deductions. Finally, respondent argues that petitioner's post-June 1985 activity in regard to the heavy equipment was not sufficient to constitute an activity "for profit". Property, once used in business, remains in such use until it is shown to have been withdrawn from business purposes. P. Dougherty Co. v. Commissioner, 159 F.2d 269 (4th Cir. 1946) (barge depreciable where available for use though idle), affg. 5 T.C. 791 (1945); Kittredge v. Commissioner, 88 F.2d 632, 634 (2d Cir. 1937) (winery depreciable though not *505 in production for 9 years; taxpayer merely failed to find a tenant or to operate the property for himself during the years in question); cf. Thriftimart, Inc. v. Commissioner, 59 T.C. 598 (1973) (property ceased to be depreciable when withdrawn from taxpayer's business and made available rent-free to charitable organization). Petitioner's equipment was available for rent, though he was unable to find a renter. Petitioner did not withdraw the equipment from business use. On this evidence, we hold petitioner's use of the equipment remained "for profit". Addition to Tax -- Negligence
In her notice of deficiency, respondent determined that petitioners are liable for an addition to tax under section 6653(a)(1) and (2) for 1985 and section 6653(a)(1)(A) and (B) for 1986 and 1987. All the 1987 issues were conceded by petitioner prior to the Court hearing. For 1985, section 6653(a)(1) provides that if any part of the underpayment is due to negligence or intentional disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Section 6653(a)(2) imposes an addition to tax equal to 50 percent *506 of the interest payable under section 6601 with respect to the portion of the underpayment due to negligence or intentional disregard of rules or regulations. An "underpayment" for the purpose of section 6653 is a "deficiency" as defined in section 6211; i.e., the amount by which the tax liability exceeds the tax shown on the tax return, except the tax shown on the return is taken into account only if the return was timely filed. See sec. 6653(c)(1). Similarly, for 1986, section 6653(a)(1)(A) provides that if any part of the underpayment is due to negligence or disregard of rules or regulations, there shall be added to the tax an amount equal to 5 percent of the underpayment. Likewise section 6653(a)(1)(B) imposes an addition to tax equal to 50 percent of the interest payable under section 6601 with respect to the portion of the underpayment attributable to negligence. Negligence under section 6653(a) is a "lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances." Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), *507 affg. in part and remanding in part 43 T.C. 168 (1964)). Petitioner bears the burden of proof regarding the additions to tax under section 6653(a). Rule 142(a); Bixby v. Commissioner, 58 T.C. 757 (1972). In regard to the depreciation deductions issue, we have held petitioner is entitled to such deductions and is therefore not negligent in making such deductions. In regard to the issues conceded for 1985 and 1986, petitioners have not presented any objective facts or arguments to show that they are not negligent in taking those deductions in the years in issue. On this record, we sustain respondent's determination that petitioners are liable for the additions to tax under section 6653(a)(1) and (2) for 1985 and section 6653(a)(1)(A) and (B) for 1986 for the conceded issues. Addition to Tax-Substantial Understatement
Respondent determined that petitioners are liable for additions to tax under section 6661 for substantial understatement of income tax liability for 1985. Section 6661(a) imposes an addition to tax of 25 percent of the amount of any underpayment attributable to a substantial understatement of tax. *508 An understatement is substantial if it exceeds the greater of: (1) 10 percent of the tax required to be shown on the return for a taxable year or (2) $ 5,000. Sec. 6661(b)(1)(A). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989). The amount of the understatement can be reduced if substantial authority exists or existed for petitioner's tax treatment of the item in dispute, or if relevant facts regarding petitioner's treatment of the item were adequately disclosed in the return or in a statement attached to the return. Sec. 6661(b)(2)(B). Section 6661(c) provides that the Secretary may waive all or part of the addition to tax under section 6661 on a showing by the taxpayer that there was reasonable cause for the understatement (or part thereof) and that the taxpayer acted in good faith. The authority to waive the section 6661 addition rests with the Secretary, not with this Court. Sec. 6661(c); sec. 1.6661-6(a), Income Tax Regs. Respondent's denial of a *509 waiver is reviewable by this Court only for abuse of discretion. Mailman v. Commissioner, 91 T.C. 1079, 1083-1084 (1988). Because petitioner is entitled to depreciation on the assets in question, petitioner is not required to recapture the investment tax credit taken on those assets until they are sold. Sec. 1.47-1(a), Income Tax Regs. Due to this holding petitioner's 1985 understatement is, by definition, not a substantial understatement. [4]Sec. 6661(b)(1)(A). On this record, we hold that petitioners are not liable for the additions to tax under section 6661 for 1985. To reflect *510 the foregoing, Decision will be entered under Rule 155.
Footnotes
1. 50 percent of the interest due on the entire deficiency. ↩
2. 50 percent of the interest due on $ 8,306.95. ↩
1. All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
2. If the Trust had been able to sell all of the lots at that time and at that price, the Trust would have had gross proceeds of over $ 440,000. The original investment in the land was $ 80,000.↩
3. Sec. 267 provides in pertinent part: SEC. 267. LOSSES, EXPENSES, AND INTEREST WITH RESPECT TO TRANSACTIONS BETWEEN RELATED TAXPAYERS. (a) In General. -- * * * (2) Matching of deduction and payee income item in the case of expenses and interest. -- If -- (A) by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not (unless paid) includible in the gross income of such person, and (B) at the close of the taxable year of the taxpayer for which (but for this paragraph) the amount would be deductible under this chapter, both the taxpayer and the person to whom the payment is to be made are persons specified in any of the paragraphs of subsection (b),
then any deduction allowable under this chapter in respect of such amount shall be allowable as of the day as of which such amount is includible in the gross income of the person to whom the payment is made (or, if later, as of the day on which it would be so allowable but for this paragraph). (b) Relationships. -- * * * * * * (2) An individual and a corporation more than 50 percent in value of the outstanding stock of which is owned, directly or indirectly, by or for such individual;↩
4. Petitioner's income for 1985 will increase by $ 3,966 due to concessions. It is readily apparent that once the tax calculations are applied to this amount, the underpayment will not exceed $ 5,000. Also $ 5,000 is greater than 10 percent of the tax required to be shown on the return.↩